## GYPSY OIL CO. v. KEYS et al.

No. 21311. Opinion Filed Jan. 27, 1931.

James B. Diggs, William C. Liedtke, Russell G. Lowe, and C. L. Billings, for petitioner.

D. D. Jennings, for respondent.

SWINDALL, J. This is an original proceeding brought in this court to review an award of the State Industrial Commission. The evidence in the record shows that Howard Kimble was the owner and operator of several motor trucks under a "class B" permit issued by the Corporation Commission of the state of Oklahoma, and engaged in trucking property for the public for compensation.

In September, 1929, Howard Kimble contracted to haul two motor truck loads of building material for the Gypsy Oil Company from a lumber yard at Seminole, Okla., to the oil field near Seminole, Okla., to be used by the Gypsy Oil Company in constructing a derrick on an oil and gas lease owned and operated by it. Joe Keys was employed by Howard Kimble to assist in hauling one of the truck loads of building material to the lease of the Gypsy Oil Company in the Seminole oil field.

On September 7, 1929, Joe Keys went to the residence of Howard Kimble, where Howard Kimble kept his trucks, to get a truck for the purpose of going to the lumber yard and loading the building material to haul the same to the oil lease of the Gypsy Oil Company. While engaged in cranking the motor truck, the same back-fired and as a result thereof Joe Keys sustained a broken wrist. Among other things, it is found by the State Industrial Commission, as follows:

"1. That claimant, on September 7, 1929, was in the employment of Howard Kimble, a subcontractor employed by the Gypsy Oil Company to do trucking; that the said Howard Kimble, as such contractor, failed to secure the payment of compensation for his employees as provided for by the Workmen's Compensation Law, and the said Gypsy Oil Company failed to require a compliance with the statute on the part of its independent contractor.

"2. That, on September 7, 1929, claimant, Joe Keys, sustained an accidental personal injury arising out of and in the course of his employment with respondent herein, as a result of which said claimant was temporarily totally disabled for a period of four weeks, for which period of time he has been paid compensation.

"3. As a further result of said accidental

injury claimant suffered a permanent loss of 25 per cent. disability to the forearm.

"4. That the average wage of claimant at the time of said injury was $5 per day.

"The Commission is of the opinion, on consideration of the foregoing facts, that claimant is entitled to compensation at the rate of $18 per week for a period of 50 weeks for 25 per cent. permanent disability to claimant's forearm.

"The Commission is further of the opinion that Howard Kimble is primarily liable for this compensation, and that the said Gypsy Oil Company is secondarily liable therefor."

Among other things, it is contended by the petitioner that in operating a motor truck and hauling freight for the public generally for compensation, the respondent Howard Kimble does not come within the terms and provisions of the Workmen's Compensation Act.

This court, in Drumright Feed Co. v. Hunt, 90 Okla. 277, 217 Pac. 491, says:

"Section 7283, C. O. S. 1921, enumerates and designates the classes of industries and business enterprises which come within the meaning of the Workmen's Compensation Law."

Now section 7283, C. O. S. 1921, as amended by section 1 of chapter 61, Session Laws of 1923, enumerates and designates the classes of industries and business enterprises which come within the meaning of the Workmen's Compensation Law; the amended section being as follows:

"Compensation provided for in this act shall be payable for injuries sustained by employees engaged in the following hazardous employments, to wit: Factories, cotton gins, mills and work shops where machinery is used; printing, electrotyping, photo-engraving and stereotyping plants where machinery is used; foundries, blast furnaces, mines, wells, gas works, gasoline plants, oil refineries and allied plants and works, water works, reduction works, elevators, dredges, smelters, powder works, glass factories, laundries operated by power, creameries operated by power, quarries, construction and engineering works, construction and operation of pipe lines, tanneries, paper mills, 'transfer and storage'—construction of public roads, wholesale mercantile establishments, employees employed exclusively as clerical workers excepted; operation and repair of elevators in office buildings; logging, lumbering, lumber yards, street and interurban railroads not engaged in interstate commerce, buildings being constructed, repaired or demolished, farm buildings and farm improvements excepted; telegraph, telephone, electric light or power plants or lines; steam heating or power plants and railroads not engaged in interstate commerce."

Section 1 of chapter 253, Session Laws 1929, subdivision "B," defines "motor carriers" as follows:

"The term 'motor carrier,' when used in this act, means any person, firm, business trust, or corporation, lessee or trustee or receiver, operating any motor vehicle with or without trailer or trailers attached, upon any public highway for the transportation of passengers or property for compensation, and for the purposes of this act, motor carriers shall be divided into three classes, as follows:

"(1) Class 'A' motor carriers shall include all motor carriers operating as common carriers of persons, or property between fixed termini or over a regular route, even though there be periodic or irregular departures from said termini or route, and

"(2) Class 'B' motor carriers shall include all other motor carriers not operating as Class 'A' and 'C' motor carriers, whether as private carriers or common carriers, of persons or property."

"(3) (Class 'C' motor carriers omitted as immaterial to the issues in this case.)"

It is clear that the clause "transfer and storage" in section 1, chapter 61, Session Laws of 1923, does not include "motor carriers," defined in chapter 253 of Session Laws of 1929, and that owners or operators of motor trucks hauling property for the public for compensation and authorized to operate as motor carriers under "Class B" permits granted by the Corporation Commission under chapter 253, Session Laws of 1929, do not come within the meaning of the industries and business enterprises covered by the Workmen's Compensation Law.

It therefore necessarily follows that when the State Industrial Commission rendered judgment against the petitioner Gypsy Oil Company, a corporation, it committed error.

The judgment of the State Industrial Commission is therefore reversed and set aside, and said cause remanded to the State Industrial Commission, with directions to dismiss said cause.

HEFNER, RILEY, CULLISON, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., dissents. LESTER, C. J., absent.

Note.—See under (1) 28 R. C. L. p. 761; R. C. L. Perm. Supp. p. 6202; R. C. L. Continuing Perm. Supp. p. 1195.