**ADAMS UNION TRUCK TERMINAL et al. v. KEESHEN et al.**

No. 24211.   Oct. 3, 1933.

Hayes, Richardson, Shartel, Gilliland & Jordan, for petitioners.

Paul F. Showalter, for respondents.

McNEILL, J. This is an original proceeding to review an award of the State Industrial Commission. The respondent received an accidental personal injury in the course of his employment. There is only one question presented, and that is whether or not the Industrial Commission had jurisdiction to render the award in this case. It is contended by petitioner that the respondent was not engaged in a hazardous occupation as defined by the Workmen's Compensation Law.

It appears that the business of petitioner consisted of maintaining a dock or a place to receive freight consignments which were brought to this central location in the city of Oklahoma City by three trucks which went out from the city to the various shippers, picking up this freight and bringing it to this central station. There were 12 class A motor freight companies operating out of Oklahoma City carrying freight to various points from the city. These freight carriers operated on a fixed time schedule, approved by the Corporation Commission. The business of respondent was to assist these particular freight carriers in the handling of the freight assignments. When one shipper in the city had a consignment of goods ready to be shipped, the shipper would call petitioner, and petitioner would send one of these trucks to the shipper's place of business, picking up the freight and bringing it to petitioner's place of business. There accompanied each shipment of freight picked up by petitioner a bill of lading on which the particular carrier, route, and consignee were designated. Petitioner would deliver these consignments of goods to the particular freight carrier, pursuant to the shipper's

bill of lading. A charge of ten cents per cwt. was paid to petitioner by the freight carrier for this service. On incoming shipments of freight the motor carrier deposits the freight it brings into the city with petitioner, and petitioner then takes this particular consignment and delivers it over the city to the various consignees. A small charge is made for this service which is paid by the carrier.

The nature of this business was explained by respondent as an "inner city pick-up and delivery service." Sometimes the consignments remain at this central station for two or three days before they are delivered to the particular shippers. Bills of lading are delivered to the various consignees within the city.

The respondent testified that he considered this ten cent charge as storage. Respondent was engaged as a truck driver, picking up and delivering freight, and while attempting to load a box of freight received an injury to his back. Respondent testified in reference to the business as follows:

"A. This firm paid ten cents for shipments coming in. When it was returned to the shipper, the shipper would charge ten cents going out. I always figured that ten cents was storage. * * * A. They charge ten cents pick-up and delivery. Q. Give me an illustration. A. If I go out and pick up a shipment, 1,500 pound shipment from some shipper, they would charge the truck line $1.50 for the pick-up on that. Q. That article was brought to your terminal—is that correct? A. Yes, sir. * * * Q. Now, this ten cents you have explained about—, when goods were delivered back to the shipper—who paid that, the shipper or the truck operator? A. The truck operator paid it."

The manager of petitioner testified that the articles remained in the terminal until the truck operators could haul them away, and that the charge for terminal work where goods came into the terminal on one truck line and went out on another truck line was five cents, and the company terms this a dockage charge, being the remuneration for its service of handling the article; that the charge for an inner line shipment was five cents and local shipment was ten cents; that the company did not advertise a transfer and storage business; that it was not equipped to handle storage; that it did not receive any consignments for any storage; that the truck operator paid for the dockage; that the company acted as the agent for the carriers; that the company confined its activity within the corporate city limits of the city of Oklahoma City.

Under section 7283, C. O. S. 1921, as amended by Laws 1923, c. 61, sec. 1, are enumerated and designated the classes of industries subject to the jurisdiction of the State Industrial Commission. Under this section of the statute compensation provided for by the Workmen's Compensation Law shall be payable for injuries sustained by employees engaged in a hazardous employment enumerated therein, among which is designated "transfer and storage." This court has had occasion to consider the term "transfer and storage," commencing with the case of Gypsy Oil Co. v. Keyes, 147 Okla. 148, 295 P. 612; in that case it was determined that both the elements of "transfer and of storage" must be included within the meaning of the term, and that it did not mean "transfer or storage."

We are of the opinion that the respondent was not engaged in a hazardous occupation defined by the Workmen's Compensation Law.

The award is vacated, and the State Industrial Commission is directed to dismiss the claim of respondent for want of jurisdiction.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, BAYLESS, BUSBY, and WELCH, JJ., concur. OSBORN, J., dissents.