**VEAZEY DRUG CO. et al. v. BRUZA et al.**

No. 24154.   Oct. 30, 1934.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

J. Berry King, Atty. Gen., and Wright & Wright, for respondents.

WELCH, J. This is an original proceeding in this court by petitioners to review an award made by the State Industrial Commis- sion on the 24th day of September, 1932, in favor of claimant, Steve A. Bruza, for cer- tain accidental personal injuries sustained by him while in the employment of petitioner Veazey Drug Company.

The record shows that the Veazey Drug Company is engaged in operating a chain of several retail drug stores, ten at the time of the accident, in Oklahoma City, Okla. The company maintains a central depot or ware- house, separate from either of the retail stores, at 24 West First street in said city, where the goods for its stores are assembled and delivered out to the retail stores as needed. Claimant was employed in the de- livery of goods from the warehouse to one of the retail stores by motorcycle when he col- lided with an automobile, causing the injury complained of. This was claimant's regular employment.

The sole question raised is the question of law whether the facts showing the character of claimant's employment brings that em- ployment within the terms and provisions of the Workmen's Compensation Law. This court has repeatedly held, where the facts are undisputed, that this question is one of law.

The business of the company, that is, the retail drug business, is not in any manner included in the business enterprises enumer- ated in the Workmen's Compensation Act, and this court has repeatedly held that such retail business is not within the act. Great Atlantic & Pacific Tea Co. v. McHan, 162 Okla. 8, 18 P. (2d) 875; Rorabaugh-Brown D. G. Co. v. Matthews, 162 Okla. 283, 20 P. (2d) 141. So that the State Industrial Com- mission would be wholly without authority to make an award for this injury, unless, in the maintenance of the separate warehouse, the company is engaging in the "transfer and storage" business, or is maintaining and operating a "wholesale mercantile establish- ment." The claimant urges that the em- ployer was, by reason of the facts above stated, engaged in the "transfer and storage" business, bringing his employment within the terms of the act, or that the employer was en- gaged in the operation of a "wholesale mer- cantile establishment," bringing his employ- ment within the act.

Under this act the term "transfer and storage," when applied to a business enter- prise, must be construed to mean "transfer and storage," and nothing else. The Legis- lature listed and enumerated the various business enterprises to come under the act,

including among them that of "transfer and storage." This court has held that in order for a business enterprise to come within that definition and classification, it must in fact be a business of "transfer and storage." So where the business engaged in was the transfer business, this court held that the business was not within the act, although merchandise accepted for transfer was stored or held temporarily in the course of transfer, or while awaiting transfer. Adams Union Truck Terminal v. Keeshen, 165 Okla. 151, 25 P. (2d) 624. And this court has held that the term "transfer and storage" does not include operation of motor carrier for hire. Gypsy Oil Co. v. Keys, 147 Okla. 148, 295 P. 612; Brinks Express Co. v. Foster, 154 Okla. 255, 7 P. (2d) 142; Barr v. Burrus, 156 Okla. 137, 9 P. (2d) 924; Holland v. Byers Drilling Co., 167 Okla. 1, 27 P. (2d) 591. And the business of operating a general delivery service for the purpose of delivering messages, packages, and parcels by messenger is not included in the act, though packages or articles for delivery might be temporarily stored or held at the central office in the course of or pending transfer or delivery. Evans v. State Industrial Commission, 161 Okla. 288, 18 P. (2d) 885. From this, and kindred decisions of our court, it is clear that in order for a business enterprise to come under the classification of the "transfer and storage" business, that must in fact be the business maintained or engaged in, and both elements of transfer and storage must be present.

Here, the petitioner Veazey Drug Company was not in any sense operating a transfer business or a storage business, nor a "transfer and storage" business. The business engaged in was a retail drug business, and pending sale the company stored their merchandise, moving it to the retail stores as needed. A person storing his own property pending his need of it for use or for sale could not be said to be engaged in the storage business. If the contention of the petitioner here be sustained, then every merchant who temporarily stores his merchandise in his basement or warehouse pending its being placed upon his shelves for sale might as well be said to be engaged in the "transfer and storage" business. We cannot follow that contention, and, therefore, conclude that the Veazey Drug Company is not engaged in the "transfer and storage" business.

Then it is urged that the warehouse of the drug company is a "wholesale mercantile establishment," and therefore within the act. Now, it is undisputed that no wholesale business is engaged in by the Veazey Drug Company. The business is a retail business exclusively. No sales whatever are made from the warehouse at 24 West First street, either wholesale or retail. The sales are made from the various stores located about over the city. The building at 24 West First street is used exclusively as a place to store surplus merchandise until needed to place on the retail shelves for sale. There at 24 West First street, the merchandise is unloaded, unpacked, and so placed or arranged as to be readily accessible for delivery in small quantities, usually by motorcycle, to the stores over the city. It is no more than a central storage depot or warehouse. No business either wholesale or retail is there engaged in. That place or establishment is maintained merely as a part of the retail drug business of the company. The claimant's only connection therewith was that he transported articles therefrom to the retail stores, and he was so engaged in a motorcycle trip when injured. Claimant's duties did require that he go into the warehouse to get articles or items of merchandise for delivery by him to the retail stores, but he had no other connection with the warehouse.

In spite of these facts, conceded to be true, the claimant insists that the employer was engaged in, and that he was employed in, a "wholesale mercantile establishment." The claimant urges that this is so, because at the warehouse merchandise in bulk or in wholesale lots as shipped from wholesale dealers was received, and since merchandise in wholesale lots was stored and handled at the warehouse, that this constituted the warehouse a "wholesale mercantile establishment." The claimant presents no authority defining the specified term "wholesale mercantile establishment," as used in our statute, and we have found none; however, when the separate words composing that expression are considered in their usual, ordinary, and natural use and meaning, no difficulty is encountered in arriving at the meaning of the statutory term. Thus, from all of the definitions, the word "establishment" means an institution, place, building, or location. Its meaning, of course, may vary and does vary with the use of the word. The word "mercantile," in its ordinary acceptance, means pertaining to the business of merchants, and is concerned with trade or buying and selling of merchandise. People v. Federal Security Co., 255 Ill, 561, 99 N. E. 668; H. H. Kohlsaat & Co. v. O'Connell, 255 Ill. 271, 99 N. E. 689; In Carr v. Riley, 198 Mass. 70, 84 N. E. 426, "mercantile" is

defined thus: "Of or pertaining to merchants or the traffic carried on by merchants, having to do with trade or commerce, trading; commercial." Thus, while the word "establishment" may mean almost any kind or character of institution, location, building or place, yet its meaning is greatly restricted when used following the word "mercantile." And the expression "mercantile establishment" must mean and refer to an institution of mercantile business, or a place, building or location where the mercantile business or the buying or selling of merchandise is conducted or engaged in. One mercantile business or establishment may differ from another just as one merchant may differ from another merchant as to the character of business engaged in. So we have retail merchants or retail mercantile establishments, upon the one hand, and wholesale merchants or wholesale mercantile establishments, on the other hand.

A mercantile establishment is a place where the buying and selling of articles of merchandise is conducted. Hotchkiss v. District of Columbia, 44 App. D. C. 73.

The term "mercantile business" is defined to mean "the buying and selling of articles of merchandise as an employment," in Graham v. Hendricks, 22 La. Ann. 523.

The term "wholesale," or the selling in or by unbroken parcels, is distinguished from "retail," or dividing into smaller quantities and selling direct to consumers, in Gorsuth v. Butterfield, 2 Wis. 237, and, also, in Kentucky Consumers Oil Co. v. Commonwealth, 192 Ky. 437, 233 S. W. 892, and in Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 227 Fed. 46.

A wholesale dealer is one whose business is the selling of goods in gross to retail dealers, and not by the small quantity or parcel to consumers thereof. State v. Lowenhaught, 79 Tenn. (11 Lea) 13; Webb v. State, 79 Tenn. (11 Lea) 662.

The statute clearly indicates that retail merchants, or retail mercantile establishments in general, are not included in the act, and that no merchant or mercantile establishment shall come within the operation of the act unless there be a "wholesale mercantile establishment." The warehouse on First street was nothing more than an adjunct to or a part of the general retail business of Veazey Drug Company, and was maintained to aid the efficiency of its several retail mercantile establishments located at various points over the city. One engaging in the retail business exclusively, or in the operation of one or more retail mercantile establishments, would not come within the act, and no one would contend to the contrary of that. Then to sustain claimant's contention here would be to hold that a person or corporation engaging in a business admittedly not within the act would come within the act if that person or corporation maintained a separate warehouse where it purchased goods or merchandise and received them in wholesale lots, and there stored them for its subsequent use.

We cannot adopt that rule. It is a matter of common knowledge that a great many persons engaged exclusively in the operation of a retail mercantile establishment maintain or use a separate building as a warehouse. Instances are perhaps rare where such retailer unloads his shipments from the wholesaler directly into his retail store. Surely, in a great majority of cases, the retailer maintains a separate room or building where all shipments from the wholesaler are received, opened, broken up into smaller packages, and arranged for ready delivery to his retail shelves or showcases, as needed there. We cannot hold that a person operating only a retail mercantile establishment is also, by such maintenance of his storeroom or warehouse or central depot, engaged in the operation of a "wholesale mercantile establishment." In this case the Veazey Drug Company was doing no more than that.

We are mindful of the well-settled rule that a person or a corporation may maintain more than one business, and that one may come within the act, while another may not. Also, that a business may have two or more branches, with some of them within the act, while other branches are not. So a person might operate a retail mercantile establishment, which is not within the purview of the act, and might operate as a branch thereof a factory or workshop where power-driven machinery is used, in which event those employed in his retail mercantile establishment would not be engaged in hazardous employment within the purview of the act, while those employed in the factory or workshop would be so employed within the purview of the act. Likewise, a person might operate a retail mercantile establishment, and in addition thereto might actually operate a wholesale mercantile establishment, in which event persons employed in the wholesale mercantile establishment would be employees within the purview of the Workmen's Com-

pensation Law, while others employed only in the retail business would not. But such rule is not applicable here by reason of the facts in this case, as above set out.

If the Veazey Drug Company was actually engaged in the "transfer and storage" business, or in the operation of a "wholesale mercantile establishment," then persons therein employed would come within the act. But the record shows that the business engaged in was exclusively that of operating several retail mercantile establishments, without in any manner engaging in the "transfer and storage" business, or in the operation of a "wholesale mercantile establishment."

That the claimant was injured is not disputed, nor that there was hazard and danger in the delivery work at which he was employed, but he cannot recover an award under the Workmen's Compensation Law, for the reason that the Legislature has seen fit to eliminate from the operation of that law, or not to include therein, the employment at which he was engaged when injured. It has been specifically held that a person employed as deliveryman for a retail mercantile establishment does not come within the purview of the act. Mobley v. Brown, 151 Okla. 167, 2 P. (2d) 1034; Havens v. State Industrial Commission, 156 Okla. 160, 9 P. (2d) 933; Crown Drug Co. v. Hofstrom, 158 Okla. 27, 12 P. (2d) 519; Spivey & McGill v. Nixon, 163 Okla. 278, 21 P. (2d) 1049. And that a deliveryman or distributor of newspapers is not employed within the purview of the act. World Publishing Co. v. Deloe, 162 Okla. 28, 18 P. (2d) 1070; Times Publishing Co. v. Stines, 165 Okla. 300, 25 P. (2d) 791. The operation of the Workmen's Compensation Law is limited to those classes of employment enumerated therein, and this court has no authority to go outside of and beyond the limits of the law as written by the Legislature. The State Industrial Commission was created to enforce and apply the Workmen's Compensation Law, and that Commission likewise is without authority to go outside of the limits of that law in awarding compensation to injured employees. As this court, speaking through Mr. Justice Osborn, said in Southwestern Cotton Oil Co. v. Spurlock, 166 Okla. 97, 26 P. (2d) 405:

"That the operation of a motortruck, in which business claimant was employed at the time of his injury, is not a hazardous employment, as defined by the act, has been determined. * * * Since claimant was not engaged in a hazardous employment at the time of his injury, the Industrial Commission was without jurisdiction to make an award."

And when an award is so made, without authority of law, then it is the duty of this court to vacate such award. Therefore, for the reasons stated, the award here under consideration must be vacated, and it is so ordered.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and BUSBY, JJ., concur. McNEILL, OSBORN, and BAYLESS, JJ., dissent. ANDREWS, J., absent.