BOARD OF RAILROAD COMMISSIONERS ET AL.,
APPELLANTS, *v.* SAWYERS' STORES, INC., RESPONDENT.

(No. 8286.)

(Submitted January 6, 1943. Decided June 16, 1943.)

[138 Pac. (2d) 964.]

*Mr. R. V. Bottomly,* Attorney General, *Mr. George S. Smith,* Assistant Attorney General, *Mr. Enor K. Matson,* counsel for the Board of Railroad Commissioners, and *Mr. E. M. Keeley,* Counsel for the Montana Trade Commission, for Appellants, submitted a brief: *Mr. Keeley* argued the cause orally.

*Messrs. Gibson & Fitzgerald,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This appeal involves the question of the validity of an order made by the Montana Trade Commission requiring the defendant Sawyers' Stores, Incorporated, to cease and desist from

doing certain acts charged to be in violation of the Montana Unfair Practices Act, Chapter 80, Laws of 1937, as amended by Chapter 50, Laws of 1939.

The proceeding was instituted by the commission upon its own complaint on behalf of the state, charging the defendant with violation of the Unfair Practices Act and ordering the defendant to appear and show cause why it should not be required to cease and desist therefrom. A hearing was had before the commission upon which an order was made requiring the defendant to cease and desist from doing the acts specified in the complaint. On petition of the defendant, the proceeding was reviewed by the district court and, on such review, the order of the commission was set aside. The appeal is from the judgment of the district court setting aside the order.

The law under which the proceeding was instituted and prosecuted deals with unfair trade competition, its purpose being, as declared in the Act itself, "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented." (Section 14.) Among the prohibitions set forth, it declares that it shall be unlawful for anyone engaged in business within the state "to sell, offer for sale or advertise for sale any article or product, * * * at less than the cost thereof to such vendor, * * * for the purpose of injuring competitors and destroying competition." (Section 3.)

The defendant is engaged in the mercantile business, owning and operating a chain of retail grocery stores—nineteen such stores in Montana and six in Wyoming. One of the Montana stores is in the city of Livingston.

The specific complaint against the defendant is that upon certain dates at its store in the city of Livingston it sold certain articles of merchandise at less than cost as defined by the Act, "for the purpose of injuring competitors and destroying competition." This the defendant, by its answer, denies. Also,

the answer alleges that the law under which the complaint is made is unconstitutional.

In our consideration of the case we find that, taking the law as it stands and the facts as proved, without any question of the validity of the Act itself or of the correctness of procedure in the trial, the commission has failed to make out a case of law violation. Two ultimate facts must be proved in order to establish a violation of the law: First, that goods were sold below cost and, second, that it was done for the purpose of injuring competitors and destroying competition. The commission failed to prove either of these ultimate facts.

It was shown that goods were purchased from the defendant at its store in Livingston in the month of December, 1940, at prices less than the cost thereof as determined by the commission. The Act says that "as applied to distribution 'cost' shall mean the invoice or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by said distributor and vendor." (Section 3.) The Act provides for cost surveys which may be used as evidence in proving the cost of doing business.

The articles purchased at the defendant's store were all of standard brands from stock obtained by defendant direct from wholesalers and producers. In determining the cost thereof to the defendant the advertised price lists of the wholesalers were used as showing the purchase cost. Ten per cent. was added thereto as overhead expense of retailing. The actual cost of doing business was not shown. The percentage used was a rate of expense which had been fixed by a general cost survey made by the commission. On some of the articles an additional item of five per cent. was added as expense of wholesaling, and on some two per cent. This also was based on cost surveys. The commission took the position that, in the system of merchandising employed, as to some of the articles there was involved the transaction of wholesaling as well as retailing. These items—the purchase cost and overhead expense—made up the

cost of the goods to the defendant as determined by the commission.

There is no controversy as to the wholesale price at which the goods were bought. As to overhead expense, defendant contends that the arbitrary amount fixed by the commission under its cost surveys was not such as provided for by the law. Also, that the item of expense of wholesaling was improperly included, the defendant being engaged only in the retailing of goods.

The Unfair Practices Act, section 12A, provides for a cost ▇ survey to be made by the commission upon application of ten or more persons, firms or corporations within "any particular retail trade or business." On such application being made, the commission is required to give public notice of hearing, stating *"the locality or area* in respect to which said cost survey is proposed to be established and the particular retail trade or business to be affected thereby." Upon the hearing had, "* * * the commission * * * shall * * * proceed to classify and define the particular retail trade or business, or parts thereof, to be affected thereby, determine and delimit the particular area within which such retail trade or business shall be so affected, and find and determine the probable 'cost of doing business' or 'overhead expense', stated in percentage or percentages of invoice or replacement cost which would probably be incurred by the most efficient person, firm or corporation within such retail trade or business within such area. The percentage or percentages so fixed and determined shall be presumed to be the actual 'cost of doing business' and 'overhead expense' of any person, firm or corporation in such retail trade or business and within the area affected by such cost survey."

The rate of ten per cent. as overhead expense of retailing was determined upon by the commission by its order made upon a cost survey on December 29, 1939. The survey was for the entire state of Montana as one area. The order declares "that a cost survey be and it is hereby established for the *retail grocers of the state of Montana* and that 10% of the invoice

or replacement cost shall represent the probable cost of doing business or overhead expense which would probably be incurred by the most efficient person, firm or corporation engaged in the retail grocery business in the state of Montana.''

This survey and the order made are not such as contemplated by the law. The cost survey which the law provides for has relation to business areas, particular localities in which retail trade or business is carried on. A survey of the entire state, including the many retail districts—widely separated and without any relation of one to the other—is not such survey as would produce a fair estimate of business cost in any particular district, nor is it such as the law provides for.

The cost of doing business as determined by a cost survey can be competent as evidence only because of express provision of law. In order that such provision be valid, the survey provided for must be reasonable so that the rate of cost thereby determined will have fair application to the business affected.

The Unfair Practices Act carefully delimits the survey to the particular trade or business to be affected and to a particular business area or locality in which the trade or business to which it has relation is carried on. The notice of hearing must state the ''locality or area'' for which the survey is to be made, and the order must ''determine and delimit the particular area within which such retail trade or business shall be so affected.''

Section 5 of the Act, which relates to the use of the cost survey as evidence, provides that ''where a particular trade or industry, of which the person, firm or corporation complained against is a member, has an established cost survey for the *locality and vicinity* in which the offense is committed, the said cost survey shall be deemed competent evidence to be used in proving the costs of the person, firm or corporation complained against within the provisions of this Act.''

We see clearly, then, that it is only a cost survey made for the locality and vicinity in which the particular business is carried on that is competent as evidence of cost. The retail

568

cost survey for the entire state of Montana as one area was not competent evidence of the defendant's cost of doing business at Livingston.

As to expense of wholesaling, there was no basis made for ▉ ▉ including that item. The wholesale expense computed was based on cost surveys. We find no provision in the Act for making wholesale cost surveys. The only cost surveys provided for are such as relate to retail business. Furthermore, there was no showing that the defendant was engaged in the wholesaling of goods. The transactions complained of and relied on as evidence of law violation were all retail sales. In procuring its stock for its general stores, defendant dealt with wholesalers and producers through its main office at Billings. Purchases were made in large quantities for distribution to the various stores. Some stock was shipped directly to the stores and some handled through its central warehouses. Such system of purchasing and distribution to its various places of retail selling does not show the wholesaling of goods—which means selling at wholesale.

With no competent evidence of the defendant's overhead ▉ expense, that item of cost was not proved. Without it, the cost of each article was less than the price for which it was sold; therefore there was failure of proof of any sale of goods at less than cost. The conclusion necessarily follows that the commission failed to establish any law violation by the defendant.

Reaching such a state of the case, it is not required that the question of purpose of the defendant in making the sales be inquired into. However, it is proper to note that there was lack of proof also of any purpose such as the law condemns. The commission relied on its proof of the sales and the testimony of competitors as to the effect generally of price cutting as showing the unlawful intent. Proof of sales at less than cost, if that had been esatblished by the evidence, would not in itself be proof of the unlawful purpose to injure competitors and destroy competition. No presumption of such purpose arises from the

mere fact of such a sale being made. It is necessary to go further and show other facts and circumstances that would furnish basis for a conclusion of the wrongful purpose. There is no such evidence in this case. The testimony of the competitors was merely a discussion of the effect of price cutting generally. It did not deal with any facts. There was no proof of any kind on which could be based a conclusion that there was any wrongful purpose in making the sales in question.

The commission having presented its case at its own hearing, without the exclusion of any of its evidence offered and with no ruling adverse to itself, and having failed to make any proof of sales at less than cost, there is no occasion for considering any question of procedure before the commission or of the validity of the Act itself. It leaves no case actually before us in which those questions are material.

The commission makes certain contentions in respect to the review proceeding had before the district court upon which it relies as grounds for reversal:

First, that the district court did not acquire jurisdiction; that the petition for review was not supported by affidavit stating specific grounds for review and showing special need thereof to correct jurisdictional error, as in certiorari.

Second, that the district court must take the findings of the commission as established fact; that the commission functions as a fact-finding body, and that the probative facts elicited in its inquiry are not to be reviewed to ascertain whether there is sufficient basis therein for the findings of the ultimate facts.

Third, that the district court should have remanded the case to the commission for the taking of additional evidence on finding insufficient fact basis for the order made.

The review had was by the special proceeding for review provided for in the Act itself. (Sec. 12 of the Act, as amended.) The provision is full and complete, both as to procedure and as to the function of the district court in dealing with the case. The review may be obtained by filing a petition

with the court praying that the order of the commission be set aside. There is no requirement that it be supported by affidavit. A copy of the petition filed shall be served upon the commission,. and it then becomes the duty of the commission to certify and file with the court a complete transcript of the proceedings including the evidence taken. ''Upon such filing of the petition and transcript the court shall have jurisdiction of the proceeding and of the question determined therein and shall have power to make and enter upon the pleadings, evidence, and proceedings. set forth in such transcript a decree affirming, modifying, or setting aside the order of the commission, * * *. The findings. of the commission as to the facts, if supported by sufficient evidence, shall be conclusive.''

The provisions as to the extent of the review clearly show the intent that the whole case shall be laid before the district court as on appeal, to be there reconsidered for determination of the question whether upon the full record of the case the order of the commission may be sustained, with the findings. of the commission controlling only if supported by sufficient. evidence. The proceeding is in no way in the nature of certiorari.. The defendant in seeking a review filed a petition setting forth: fully the proceedings before the commission, and prayed that. the order of the commission be set aside. A copy of the petition was served upon the commission and the proceedings thereupon were certified in full to the district court. The district court thereupon acquired full jurisdiction. Some time after its certification of the full record to the district court, the commission filed a motion to quash the petition for review. This was. denied, and correctly so.

The district court, in its review of the case, found that the findings of the commission were not supported by sufficient evidence. In this it was correct for the same reasons as we have already stated in our review of the evidence. There being no competent evidence to support the findings, it was the duty of the district court to set the order of the commission aside.

The provision for remanding the case to the commission is ██ that "if either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceedings before the commission, the court may order such additional evidence to be taken before the commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper." There was no petition for remand of the case and no point can be made thereon. There is no ground for the contention of the commission that the law was not followed in the review of the case by the district court.

The judgment of the district court is affirmed.

Mr. Chief Justice Johnson and Associate Justices Erickson, Morris and Adair concur.