SAFEWAY STORES, Inc., v. OKLA-
HOMA TAX COMMISSION.

No. 31588.   April 10, 1945.

*157 P. 2d 749.*

Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, for plaintiff in error.

E. L. Mitchell, C. W. King, and A. L. Herr, all of Oklahoma City, for defendant in error.

BAYLESS, J.   This appeal from the Oklahoma Tax Commission involves the correctness of its order in the matter of the protest of Safeway Stores, Inc., on the cancellation of its wholesale license to sell cigarettes.

The matter was tried on a stipulation of facts from which it appears that for several years this corporation has conducted business through a chain of retail stores; in 1940, in furtherance of its business, Safeway purchased a wholesale grocery concern in Oklahoma City, including its warehouse and stocks of merchandise, and thereafter maintained and operated this warehouse for the purpose of receiving the merchandise with which it dealt, including cigarettes, in wholesale quantities and supplying therefrom the needs of its chain stores or retail outlets exclusively. At that time the Oklahoma Cigarette Stamp Tax Act of 1939, 68 O.S. 1941 §§ 586-586p, was in effect, and Safeway, deem-

ing itself a "wholesaler" within the definition of section 586(c), supra, reading:

"The term 'wholesaler' and/or 'jobber' is defined to mean a person who comes into possession of cigarettes, whether as a manufacturer, warehouseman or distributor, for the purpose of selling them to retailers or to persons outside or within the State who might resell or retail such cigarettes to consumers. Provided, that this shall not be deemed to include any person as defined in this Act who in any event sells cigarettes to consumers or users through either a retail store or through vending machines."

—applied for and obtained a license and claimed and obtained the discount allowed to wholesalers for affixing the cigarette stamps to packaged cigarettes prior to the sale under section 586d. In 1943 this Cigarette Stamp Tax Act was amended by House Bill 436, effective April 12, 1943, and among the amendments of the preceding law was a new definition of "wholesaler" or "jobber" in section 586(c), supra; and said section 586(c) as amended now reads:

"(c) The term 'wholesaler' and/or 'jobber' is defined to mean a person, firm, or corporation (1) organized and existing, or doing business primarily to sell cigarettes to, (2) and render service to retailers in the territory such person, firm, or corporation chooses to serve; (3) that purchases cigarettes directly from the manufacturer; (4) that at least seventy-five (75) per cent of whose gross sales are made at wholesale; (5) that handles goods in wholesale quantities (6) and sells through salesmen, advertising, and/or sales promotion devices; (7) that carries at all times at his or its principal place of business a representative stock of cigarettes for sale, (8) and that comes into the possession of cigarettes for the purpose of selling them to retailers (9) or to persons outside or within the state who might resell or retail such cigarettes to consumers." (The subdivision numbers herein are our arrangement.)

Although Safeway had the benefit of the 1939 Act, as before stated, the Tax Commission ruled that it did not meet

the definition of a "wholesaler" or "jobber" under the 1943 amendment just quoted, and denied the license or the benefit of the discount that went · therewith, and after it overruled Safeway's protest thereto this appeal followed.

One of the arguments made by Safeway, and which we think should be disposed of at once, is that the ruling appealed from is erroneous in the light of the previous administrative construction of its status under the prior statute. The rule which it seeks to invoke in this respect is well known but offers very little support in this instance. A reading of the definitions of a "wholesaler" or "jobber" under the 1939 Act and under the 1943 amendment discloses such a disparity as to render administrative construction of the 1939 Act of doubtful value as an aid in construing the 1943 Act. For that reason we lay aside at once this aspect of the case.

The principal contention made by Safeway is, "Since Safeway performs the functions for which the discount is permitted, the refusal of such a discount discriminates against Safeway and amounts to a taking of its property without due process of law." This is adverted to in every other proposition urged by them with respect to the construction of the 1943 amendment. One difference between the 1939 Act and the 1943 amendment is in the more detailed enumeration of the elements of operation in the 1943 Act that are usually performed by one deemed to be a wholesaler or jobber as differentiated from a retailer. The Tax Commission's ruling assumes that the phrase of the 1943 amendment reading, "The term 'wholesaler' and/or 'jobber' is defined to mean a person, firm, or corporation organized and existing, or doing business primarily to sell cigarettes to, and render service to retailers in the territory such person, firm, or corporation chooses to serve; . . . " should have primarily interpretive effect, and that the succeeding qualifications (numbered by us) should be read conjunctively with respect to the first phrase above quoted, and that it requires all of the functions to constitute a wholesaler within the meaning of the amendment; whereas Safeway, while conceding that the quoted phrase is entitled to some interpretive effect, urges that it stands alone, and that it, as well as the other numbered qualifications, should be read disjunctively, and that a party coming within the purview of any of them is within the definition intended.

We are of the opinion that the construction placed on this act by the Oklahoma Tax Commission as evidenced by its order herein is correct, and that the interpretation urged by Safeway is not correct. Without our being in any wise persuaded by the construction placed on the previous act, it is obvious that the Legislature desired to change the definition therein, and that in enacting the 1943 Act it detailed at length what it thought was the indicia of a "wholesaler" or "jobber," and in so doing did not use any words or grammatical arrangement that indicated an alternative sense. The primary purpose which a "wholesaler" or "jobber" must have to come under the phrase of the 1943 amendment above quoted is to sell its cigarettes to, and render service to "retailers" in the territory which it chooses to serve, and that is a thing which Safeway, even though it may show compliance with some or most or all of the qualifications thereinafter stated, does not purpose. It purposes to serve itself, that is, its retail outlets only, and in so conducting its business does not meet fairly the primary purpose to any greater degree or extent than it would if it had only one huge retail outlet, or if it designated the manager of one of its retail stores or a committee of such managers to act as the purchasing authority for all of its retail outlets in Oklahoma City. See Board of Railroad Com'rs v. Sawyers Stores, 114 Mont. 562, 138 P. 2d 964, 968. See Veazey Drug Co. v. Bruza, 169 Okla. 418, 37 P. 2d 294, wherein a company that owned and operated a chain of retail drug stores and also bought for all of these stores

and distributed merchandise to them from a central agency or warehouse, was held not to be a wholesaler within the meaning of the Workmen's Compensation Law, Veazey Drug Co. v. Fleming, 42 Fed. Supp. 689. We realize that no general rule and no citation of the general run of cases applying general rules in determining what are and are not wholesale establishments will control in the face of a statutory definition, but otherwise it is apparent from all of the authorities that whether an operator of a chain of retail outlets purposes to serve itself only in establishing a central buying and distributing agency for its retail stores or will serve all retailers in the territory indifferently is of controlling significance.

It is significant that the language of the act requiring the affixing of the stamps thereon actually imposes the duty upon retailers (section 586d) as it previously existed or as amended. Thus, Safeway, in operating a chain of retail outlets, is in no better or worse position than the owner and operator of a single retail outlet under these facts. It is true that the combined demands of all of their chain of retail outlets results in a greater volume of purchases than might be made by the average retailer. But if Safeway received this volume of cigarettes unstamped at its various retail outlets directly from the makers, its duty to stamp them without benefit of the compensating discount would be as great as that of a single retailer under section 586d. This is an answer to the argument based on the function theory.

We are not impressed with Safeway's argument respecting the unconstitutionality of this act as being discriminatory. All of the authority cited by Safeway clearly recognizes the right of Legislatures to adopt reasonable classifications and all that is required is that the tax levied apply equally to those coming within the classes specified. Safeway is not entitled to have the act declared unconstitutional simply because the definition adopted by the Legislature does not include it. The difference between the service rendered to itself by warehouses maintained for the convenience of chain store outlets and the service rendered by "wholesalers" or "jobbers" is well recognized and has been stated by the United States Supreme Court in Liggett Co. v. Lee, 288 U.S. 517, 77 L. Ed. 929, as not involving discrimination, but as recognizing in principle a clear distinction in economic methods and purposes above alluded to.

The order appealed from is affirmed.

HURST, V.C.J., and RILEY, OSBORN, WELCH, CORN, and DAVISON, JJ., concur.

GIBSON, C.J., dissents for the reason that he is of the opinion 68 O.S. 1941 § 586(c) should be construed disjunctively, and, consequently, the taxpayer should be held to be a "wholesaler" within the definitions of that class in the aforesaid act.