Dear Mr. Redden,
The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following questions:
1. May the Oklahoma Ordnance Works Authority ("Authority") construct astructure at the Mid-America Industrial Park which is to be leased to acorporate lessee for use as a warehouse where the lessee proposes to usethe structure exclusively for the storage of goods for ultimate deliveryto its wholly owned stores situated throughout the State and where thelease stipulates that no sales of goods, either wholesale or retail,would take place at the warehouse?
 2. If the answer to question number 1 is in the negative, would theconstruction and leasing of the warehouse on Authority owned land belawful if full payments in lieu of ad valorem taxes are collected by theAuthority during all years that the bonds for financing the constructionof the warehouse were outstanding, and not just those years subsequent tothe tenth anniversary date of the issuance of such bonds?
The Authority is a public trust, the beneficiary of which is the State of Oklahoma. 60 O.S. 164 (1971). The trust was created pursuant to the Oklahoma Trust Act, 60 O.S. 176 — 60 O.S. 180 (1971). Article III of the Trust Indenture states that the purposes of the trust are:
 "(1) To promote the welfare of the people of the State of Oklahoma, to balance Oklahoma's agricultural and raw materials production with increased processing, manufacturing and other industrial and commercial operations in order to provide additional employment for the people of Oklahoma and additional payrolls, purchasing power, and markets for Oklahoma's people and products, so as to sustain and improve the economy of the State of Oklahoma, including state and local tax revenues resulting therefrom, all of which is hereby declared to be a public purpose and for the public use and benefit . . .
The Authority was lawfully constituted by the filing of a Trust Indenture with the Secretary of State and by the issuance of an Executive Order signed by the then Governor of the State of Oklahoma, J. Howard Edmondson on December 29, 1960. In 1976, the Oklahoma Legislature enacted 60 O.S. 178.4 (1976), which states:
 "Trusts created under the provisions of 60 O.S. 176 — 60 O.S. 180.55 hereof or any amendments or extensions thereof shall not include any trust purpose, function, nor activity: in any wholesale outlet unless said wholesale outlet is located on the same premises with and as a direct part of the industry; nor shall it include a retail outlet unless said retail outlet is operated in conjunction with and on the same premises as the industrial, manufacturing, cultural, recreational, parking, transportation or airport facility; nor shall it include a residential enterprise or function except as provided in Section 13 hereof."
Your first question asks, essentially, whether the Authority may lawfully finance, construct and lease a structure to a corporation for use as a warehouse facility. Your question also states that the proposed corporate lessee intends to use the warehouse facility as a central holding point for goods and merchandise ultimately bound for its wholly owned retail stores. As stated in the question, no sales are to take place, whether in wholesale lots or on a retail basis, from the warehouse facility. The question, therefore, is not whether the operation of a warehouse on public trust land is lawful, rather it is whether the operation of a warehouse which is an integral part of the distribution process of a company's retail operation may be lawfully constructed and operated on public trust lands.
There is no authority directly on point. Some guidance, however, may be derived from pronouncements of the Oklahoma State Supreme Court with respect to similar questions which arose in the context of different statutes. In Veazey Drug Company v. Bruza, 169 Okla. 418, 37 P.2d 294 (1934) the Oklahoma Supreme Court was called upon to determine whether the operation of a warehouse along lines substantially similar to those presented in your request was an activity subject to the then-existing Workmen's Compensation Laws. The Workmen's Compensation Law at the time, specifically excluded from coverage employees of businesses engaged in retail sales. In the Veazey Drug case, the Court said:
 "Now, it is undisputed that no wholesale business is engaged in by the Veazey Drug Company. The business is a retail business exclusively. No sales whatever are made from the warehouse at 24 W. 1st Street, either wholesale or retail. The sales are made from the various stores located over the City. The building at 24 W. 1st Street is used exclusively as a place to store surplus merchandise until needed to place on the retail shelves for sale. There at 24 W. 1st St., the merchandise is unloaded, unpacked, and so placed or arranged as to be readily accessible for delivery in small quantities, usually by motorcycle, to the stores over the City. It is no more than a central storage depot or warehouse. No business, either wholesale or retail is there engaged in. That place or establishment is maintained merely as a part of the retail drug business of the company."
Later in the same Opinion, the Court states:
 "It is a matter of common knowledge that a great many persons engaged exclusively in the operation of a retail mercantile establishment maintain or use a separate building as a warehouse. Instances are perhaps rare where such retailer unloads his shipments from the wholesaler directly into his retail store. Surely, in a great majority of cases, the retailer maintains a separate room or building where all shipments from the wholesaler are received, opened, broken up into smaller packages, and arranged for ready delivery to his retail shelves or showcases, as needed there. We cannot hold that a person operating only a retail mercantile establishment is also, by such maintenance of his storeroom or warehouse or central depot, engaged in the operation of a "wholesale mercantile establishment."
In another case, the Oklahoma Supreme Court had before it a corporation organizing its business activities in a fashion substantially similar to that outlined in your question. Safeway Stores, Inc. v. Oklahoma Tax Commission, 195 Okla. 333, 157 P.2d 749 (1945). In the Safeway Stores case, the taxpayer asserted a right to a wholesaler or jobber license so that it might obtain cigarettes at a discount permitted under the then existing Cigarette Stamp Tax Act. The Court, in Safeway, said:
 "The primary purpose that a `wholesaler' or `jobber' must have under the phrase of the 1943 amendment above quoted is to sell its cigarettes to, and render service to `retailers' in the territory which it chooses to serve, and that is a thing which Safeway, even though it may show compliance with some or most or all of the qualifications therein stated, does not propose. It proposes to serve itself, that is, its retail outlets only, and in so conducting its business, does not meet fairly the primary purpose to any greater degree or extent than it would if it had only one huge retail outlet, or if it designated the manager of one of its retail stores or a committee of such managers to act as the purchasing authority for all its retail outlets in Oklahoma City. Citations of authority omitted.
 "See Veazey Drug Company v. Bruza, 169 Okla. 418, 37 P.2d 294, wherein a company that owned and operated a chain of retail drug stores and also bought for all of those stores and distributed merchandise to them from a central agency or warehouse was held not to be a wholesaler within the meaning of the Workmen's Compensation Law Citation of authority omitted. We realize that no general rule and no citation of general run of cases applying general rules in determining what are and are not wholesale establishments will control in the face of the statutory definition, but otherwise it is apparent from all the authorities that whether an operator of a chain of retail outlets proposes to serve itself only in establishing a central buying and distributing agency for its retail stores, or will serve all retailers in the territory indifferently is of controlling significance."
It appears from the foregoing cases, that the Oklahoma Supreme Court has adopted the view, in the past, that there is no material distinction between the operation of a central depot or warehouse as an integrated part of the operation of a retail outlet or store and the operation of the same services out of a single facility which is at one and the same time both the principle place of storage of merchandise and of sale of merchandise. The provisions of 60 O.S. 178.4 prohibit any trust created pursuant to 60 O.S. 176 — 60 O.S. 178.55, as is the Authority from including any trust purpose, function or activity of a wholesale or retail outlet nature on a trust property. Since the warehouse or storage aspect of the retail activity of the proposed corporate lessee is legally nondistinguishable from its retail activities elsewhere, the operation of a warehouse in furtherance of such retail outlets under the circumstances previously described would constitute the engaging in activities which were prohibited by 60 O.S. 178.4.
With respect to your second question, the provisions of 60 O.S. 178.4 do not contain any reference as to the legal effect of waiving ad valorem tax exemptions, if any exist, as a factor which would effect relief from the prohibitive portions of the statute. Quite simply, the statute states that no trust shall include in any trust purpose, function, or other activity in either a wholesale or retail outlet unless such wholesale or retail outlet comes specifically within the plain terms of the statute. Since the corporate lessee does not propose to operate a wholesale outlet "on the same premises with and as a direct part of the industry," and does not propose to operate a retail outlet "in conjunction with and on the same premises" as the industrial or manufacturing concern, the trust may not lawfully permit its property to be subjected to that kind of use.
It is, therefore, the opinion of the Attorney General that yourquestions be answered as follows:
 1. The Oklahoma Ordnance Works Authority may not finance, construct orlease a structure on land owned by the Trust Authority for use as awarehouse by any person who proposes to engage in the storage anddistribution of its own goods and merchandise to its wholly owned retailoutlets as such activity would violate the plain provisions of 60 O.S.178.4 (1976); and
 2. The payment in lieu of ad valorem taxes on property subjected to ause as a warehouse for an entity which intends to store its own goods andmerchandise for delivery and sale at its wholly owned retail outlets doesnot take such activity outside the prohibitions of 60 O.S. 178.4 (1976).
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN F. PERCIVAL, ASSISTANT ATTORNEY GENERAL