Dear Honorable Combs,
The Attorney General has received your request for an official opinion asking, in effect:
 May the trustees of a public trust organized pursuant to 60 O.S. 176 et seq. (1981), authorize the issuance of revenue bonds, the proceeds of which will be used to acquire, construct or equip a livestock auction market.
Legislation denominated "Trusts for the Furtherance of Public Functions," commonly referred to as the Oklahoma Public Trust Act, first enacted in 1951 and presently codified at 60 O.S. 176 et seq. (1981), authorizes the creation of trusts with the State, any county, or any municipality as beneficiary and authorizes these public trusts to issue obligations and provide funds for the furtherance of any approved purpose of their beneficiaries. Title 60 O.S. 176(a) (1981), quoted here in pertinent part, describes generally the intended scope of public trust operations:
 "Express trusts may be created to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or of any county or municipality in real or personal property, either or both, or in any estate or interest in either or both, with the state, or any county or municipality as the beneficiary thereof. . . ."
Two statutes describe limitations on the public trust financing mechanism. The statutes are very similar. The excluded purposes are described first in 60 O.S. 178.4 (1985) which provides:
 "Trusts created under the provisions of 60 O.S. 176
through 60 O.S. 180.55 of hereof or any amendments or extensions thereof shall not include any trust purpose, function nor activity: in any wholesale outlet, unless said wholesale outlet is a direct part of the industry. Provided, however, that the distribution centers for intoxicating and nonintoxicating alcoholic beverages as defined in Title 37 of the Oklahoma Statutes shall not qualify under the provisions of this title; nor shall it include a retail outlet unless said retail outlet is operated in conjunction with and on the same premises as the industrial, manufacturing, cultural, recreational, parking, transportation or airport facility; nor shall lt include a residential enterprise or function except as provided in 60 O.S. 178.6 of this title." (Emphasis added).
The analogous provision of the Local Industrial Development Act, 62O.S. 652 (1981), provides in pertinent part:
 "Industry as referred to herein shall not include any trust purpose function nor activity: in any wholesale outlet, unless said wholesale outlet is located on the same premises with and is a direct part of the industry; nor shall it include a retail outlet unless said retail outlet is operated in conjunction with and on the same premises as the industrial, manufacturing, cultural, recreational, parking, transportation or airport facility; nor shall it include a residential enterprise or function except as provided in Section 13 of [60 O.S. 178.6]." (Emphasis added).
Although there is some variation in the cited statutes, both proscribe public trust financing for wholesale and retail outlets. The operative question becomes whether livestock auction markets are wholesale or retail outlets.
Although "wholesale" and "retail" are terms which periodically have been defined in decisional law, the meaning of "outlet" must be derived by recourse to other sources. Statutes are to be construed by reading their provisions with the ordinary and common definitions of the words used unless the context dictates that a special or technical definition is to be used. State ex rel. Western State Hospital v. Stoner, 614 P.2d 59
(Okla. 1980).
Webster's Third New International Dictionary, p. 1602 (3rd ed. 1981), offers, among others, these definitions for "outlet:" "[3(a)] a market for a commodity; [3(b)] a retail store. . . ." The first definition of "outlet" describes the livestock auction market with some degree of accuracy.
The distinction between "wholesale" and "retail" was addressed, although not in the agricultural context, by the Oklahoma Supreme Court in Skelly Oil Company v. Waters, 348 P.2d 320, 323 (Okla. 1960):
 " `The term "wholesale" or the selling in or by unbroken parcels is distinguished from "retail" or dividing into smaller quantities and selling direct to consumers' Veazey Drug Co. v. Bruza, 169 Okla. 418, 37 P.2d 294,296. . . . We must conclude that `wholesale mercantile establishment' as used in this Act (85 O.S. 2 (1951)) means a business concern that primarily sells to jobbers or retailers in relatively large quantities or in unbroken lots for resale, and which does not ordinarily in the conduct of its business sell individual or single items directly to the consumer. The test is not the quantity of goods or the prices charged, but the nature of the sale, i.e., whether it is for resale or for consumption." (Emphasis added).
The term "livestock auction market" is defined by 2 O.S. 9-131
(1981) to mean "any established place where livestock is regularlyoffered for sale at public auction."
It is difficult to conceive of the "sales" at livestock auction markets to be other than "wholesale" or "retail" and thus within the statutory proscription either of 60 O.S. 178.4 (1985) or 62 O.S. 652 (1981). The sales effected must, of necessity, be either for resale (e.g., to feedlots or slaughterhouses) or to ultimate consumers (e.g., for breeding purposes or for slaughter by individual households). Unless the livestock auction is run on the same premises with and in conjunction with an industrial, manufacturing, cultural, recreational, parking, transportation or airport facility, it cannot qualify as an eligibleretail outlet under either of the two aforementioned statutes. Considered as a wholesale outlet, the more plausible prospect, both statutes require it to be "a direct part of the industry." The use of the definite article "the" before "industry" in both statutes suggests that the wholesale outlet must be connected with a specific industrial enterprise. Based on the facts you have provided, the livestock auction market is not connected with a specific industry. Unless that functional and legal connection is made, the wholesale outlet is not eligible for public trust financing. It should be noted that to qualify under 62 O.S. 652 (1981) there is the additional requirement that the wholesale outlet be on the same premises as the industry of which it is a direct particle Based on the facts provided, livestock auction markets cannot qualify for trust financing either as retail or wholesale outlets connected with an industry.
It is, therefore, the official opinion of the Attorney Generalthat the use of public trust financing to acquire, construct, orequip a livestock auction market is prohibited under 60 O.S. 178.4(1985) and 62 O.S. 652 (1981).
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
NED BASTOW, ASSISTANT ATTORNEY GENERAL