## SOUTHWESTERN GROCERY CO. v. STATE INDUSTRIAL COMMISSION et al.

No. 12671—Opinion Filed March 21, 1922.

(Syllabus.)

**1. Master and Servant — Workmen's Compensation—Statutes— Repeal.**

Section 1 of chapter 14, Session Laws of 1919, p. 14, repealed section 1, article 1 of chapter 246, Session Laws of 1915, p. 471, including the provision: "If there be or arise any hazardous occupation or work other than those hereinabove enumerated, it shall come under this act."

**2. Same—Claims—Presumptions.**

In a proceeding for the enforcement of a claim for compensation under the Workmen's Compensation Act, the presumption prevails that the claim comes within the provisions of the act, in the absence of substantial evidence to the contrary.

**3. Same—Departments of Employer's Business—Scope of Act.**

The Workmen's Compensation Act recognizes the fact that the employer may conduct different departments of business, some of which fall within the act, and some of which do not.

**4. Same—"Employer"—Definition.**

An employer, under the provisions of the Workmen's Compensation Act, is one who employs more than two workmen.

Original action by the Southwestern Grocery Company to review order of State Industrial Commission awarding workmen's compensation to Ralph Radecke. Reversed and remanded.

Bush, Moss & Owen, for petitioner.

C. R. Thurlwell, for respondent.

PITCHFORD, V. C. J. This is an appeal from the order of the State Industrial Commission, awarding to the claimant, Ralph Radecke, certain compensation, and ordering the petitioner, the Southwestern Grocery Company, to pay all the medical expenses growing out of an accident received in July, 1921, by the claimant while in the employment of the petitioner. There is no controversy over the facts involved.

The petitioner owned and operated a grocery and meat market in the residential district of the city of Tulsa, Okla. The meat market, or butcher shop, was in the rear of the store and in charge of a butcher. The claimant, Radecke, was employed to assist the butcher after school hours and on Saturdays, his duties being confined to dressing chickens and cleaning up the meat market. In the meat department there were an electric sausage grinder and a hand-power meat slicer. At the time of the injury, the claimant was in a rear room, adjoining the meat market, engaged in dressing chickens, using in connection therewith a knife seven or eight inches long. There was no kind of machinery in the room where the claimant was working. Claimant, at the time of the injury, was cutting a chicken through the back bone, and the knife slipped and struck him in the right groin. He was taken to the hospital where he remained for about 15 days, and was unable to resume his work for a period of seventeen weeks and three days.

It is contended by the petitioner, the grocery company, that, under the Workmen's Compensation Act, and the amendments thereto, there is no provision including the kind of employment engaged in by claimant at the time of the injury; that a retail grocery store does not come within the provisions of the act. On the other hand it is contended by the respondent that the fact that there was a sausage grinder in the store operated by electricity, would bring the business, including both the meat market and the grocery store proper, under the head of "Workshop where machinery is used."

We have examined many authorities, but have been unable to find where this identical question has been passed upon by any of the courts of last resort; however, there appears to be running through the great majority of the decisions, construing the Workmen's Compensation Act, a sympathetic appreciation of the humane considerations, as well as a desire to do justice to employer and employe alike, on the part of the lawmakers in enacting this law. We are thoroughly in accord with the purposes of the act, and inclined to follow that line of decisions holding that the act and all parts thereof should be liberally construed, in order that the legislative intent should be effectuated and safeguarded.

Section 11 of chapter 246, Session Laws of 1915, p. 471, provides that, in any proceeding for the enforcement of a claim for compensation under the Workmen's Compensation Act, it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of the act. While section 10 of chapter 14, Session Laws of 1919, p. 14, provides that the decision of the commission shall be final as to all considerations of fact, it therefore follows that the sole question for our consideration is, Does a retail grocery store come within the provisions of the act, by reason of having in connection therewith a meat market wherein is installed a sausage grinder operated by electricity?

The instant case is governed by the 1919 act, which is found in Session Laws of 1919, p. 14. Section 2 of this act provides that compensation shall be payable for injuries sustained by employes engaged in the hazardous employments therein enumerated, and included in such employments are "workshops where machinery is used."

Hazardous employment is defined by the act as "All manual or mechanical work or labor connected with or incident to one of the industries, plants, factories, lines, occupations or trades mentioned in section 2 of the act."

It is contended, however, on the part of the respondents that, regardless of whether or not the business conducted by the petitioner came under the term of "workshop where machinery is used," the grocery company would be liable under section 2 of article 1 of chapter 246 of the act of 1915, supra, which after enumerating the various hazardous employment covered by the act, provides:

"If there be or arise any hazardous occupation or work other than those hereinabove enumerated, it shall come under this act."

We are of the opinion, and so hold, that this provision of the act just quoted was repealed by section 1 of the act of 1919, supra, which provides:

"That section 2 of article 1 of chapter 246, Session Laws of 1915, be and the same is hereby amended to read as follows:

Section 2. Compensation provided for in this act shall be payable for injuries sustained by employes engaged in the following hazardous employments, to wit:

"Factories, cotton gins, mills and workshops where machinery is used; printing, electrotyping, photoengraving and stereotyping plants where machinery is used; foundries, blast furnaces, mines, wells gas works, gasoline plants, oil refineries and allied plants and works, water works, reduction works, elevators, dredges, smelters, powder works, glass factories, laundries operated by power, creameries operated by power quarries, construction and engineering works, construction and operation of pipe lines, tanneries, paper mills, transfer and storage, construction of public roads, wholesale mercantile establishments, employes employed exclusively as salesmen or clerical workers excepted; operation and repair of elevators in office buildings: logging, lumbering, street and interurban railroads not engaged in interstate commerce, buildings being constructed, repaired or demolished, farm buildings and farm improvements excepted; telegraph, telephone, electric light or power plants or lines; steam heating or power plants and railroads not engaged in interstate commerce."

Section 2, so amended, omitted entirely the foregoing provision of 1915 act. Section 1 of the act of 1919 superseded section 2 of the act of 1915, and now controls. Even if section 2 of the act of 1915 had not been amended, this provision could have no bearing on the instant case.

In Board of Commissioners of Kingfisher County v. Grimes et al., 75 Okla. 219, 182 Pac. 897, Owen, C. J., in delivering the opinion of the court, says:

"This section of the act also provides if there be or arise any hazardous occupation other than those enumerated, it shall come under the act. It is urged that work on the state highway is a hazardous occupation and is included under this provision of the section. This language must be construed, under the rule of ejusdem generis, with that more particularly described by the preceding words of the context. General words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms. This general language must be construed to include employments of the same general character, but not embracing every species of employment in which the services of others may be rendered."

It is conceded by the respondents that an ordinary retail grocery store which handles goods in bulk, in cans and packages, and where no machinery of any kind is used, would not come within the scope of the Workmen's Compensation Act, but it is contended that when the owners of such business go further and add machinery and appliances known to be dangerous, then the business would come within the designation "hazardous employment", and would be classed under the head of "workshops." To sustain this contention, the case of Wendt v. Industrial Insurance Commission of the State of Washington, 141 Pac. 311, is relied on.

In the case just cited, it appears that the employe who was killed, was employed by Stone-Fisher Company, of Tacoma, who owned and operated a large department store, engaged in buying and selling merchandise of various kinds, and employed a large number of persons. The firm used three delivery wagons and three delivery automobiles. Across the alley from the store building, the company maintained a repair shop operated primarily for the repair of its delivery wagons and automobiles. In this repair shop was a carpenter bench, carpenter tools and a power lathe, emery wheel, grindstone, drills, etc., which were operated by electric current by a two-horse-power electric motor, the current being furnished by the city of Tacoma over a low-tension wire carrying 220 volts. The company employed ordinarily one, but sometimes two or three carpenters for the purpose of making shelving, necessary repairs, additions and alterations in the fittings of the store. On the day of the accident, the deceased attempted to turn on the electric current by means of the switch for the purpose of putting in motion a grindstone on which he was going to sharpen a chisel. In taking hold of the handle of the switch, his fingers came in contact with the copper fittings or contacts, and he was instantly killed by the electric current caused by the secondary wire of the city of Tacoma, which carried the current into the repair shop, becoming crossed with a high tension wire of a power company, which carried a high voltage, and caused about 2,700 volts to pass through the body of the deceased. In the body of the opinion, we find the following:

"It may be admitted that in its main business of conducting a large department store the Stone-Fisher Company was not engaged in an extra hazardous industry, but in connection with and as part of this business it maintains a workshop where machinery is used, power-driven machinery is employed, and manual labor is exercised, over which place it has the right of access or control, which place is expressly included within the enumeration of extra hazardous work in section 2, and within the definition of section 3. Not only, then, do we find an express inclusion of the place where the deceased was injured, but the further language of section 2, 'if there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act,' is an expression of the legislative intent to bring under the provisions of the act every character of work which from its nature should be found to be extra hazardous. In addition, the employment in which Wendt met his death would fall within the three classes quoted from section 4, 'carpenter work not other-

wise specified', 'working in wood not otherwise specified,' and 'machine shops not otherwise specified.' Again, the act recognizes in section 4 that the same employer may at the same time be engaged in the employments both within and without the purview of the act, so far as the hazardous character of the employment is concerned; in which case the act shall apply only to the extra hazardous departments, and to the workmen employed therein. So, however we answer the contention of the commission, whether it is necessary for the employer to engage in some extra hazardous work, either in respect to his whole business or some department thereof, in order that injured employe shall be entitled to protection, or whether it is only necessary to show that the injured employe himself was engaged in some extra hazardous work, the result upon the submitted facts must be the same. The business of the Stone-Fisher Company was within the meaning of this act extra hazardous in the maintenance of the workshop where power-driven machinery and men were employed, and the deceased himself was at the time he met his death, engaged in an extra hazardous employment as defined by the act. If we could so construe the act that the extra hazardous character or the employer's business was to be determined by the business he was principally engaged in, we might accept the finding of the commission; but the act, as we have seen, recognizes the fact that the same employer may conduct different departments of business, some of which fall within the act, some of which do not."

We are of the opinion that in the instant case the fact that the petitioner operated an electric sausage grinder in the meat market did not render the entire store a workshop, and bring an employe, whose business or duties were not confined entirely to that part of the store disconnected with the meat market, within the term of one engaged in hazardous employment as contemplated by the statute.

On the other hand, we can fully understand how a meat shop could be conducted in such a manner as to come within the provisions of the act. Assuming, but not deciding, that the meat market conducted by the petitioner could be included within the provisions of the act, either as factory or workshop, by reason of the sausage grinder being operated by an electric current, the further question is then presented as to whether or not the petitioner would be an employer as contemplated by the act.

In the meat market, or butcher shop, whichever it may be termed, there were but two employes, to wit, the butcher and the claimant. All the claimant had to do, as we have seen, was to clean up the market and dress chickens; he had no connection whatever

with the sausage grinder; he was not injured by the grinder being operated; as a matter of fact, the same was not operated at the time of the injury, and was used by the butcher only on occasions where a customer would call for sausage. If we should hold that under the facts the meat market or department would come within the provisions of the act, the commission would have no jurisdiction over the petitioner. unless the latter was an employer as defined by the statute.

Under section 4 of the act of 1919, supra, we find the following:

"That the provisions of this act shall not apply to an employer. unless he shall employ more than two workmen."

The award of the Industrial Commission is therefore reversed, and cause remanded for further proceedings not inconsistent with the views herein expressed.

JOHNSON, McNEILL, ELTING, and NICHOLSON, JJ., concur.