## BISHOP et al. v. WILSON et al.

No. 21434. Opinion Filed Feb. 17, 1931.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

J. Berry King, Atty. Gen., and Mike Foster, for respondents.

HEFNER, J. This is an original proceeding to review an award of the State Industrial Commission wherein it found that John Wilson, one of the respondents herein, had sustained an accidental personal injury arising out of and in the course of his employment in a hazardous occupation. It further found that by reason of the injuries the respondent, John Wilson, had lost the sight of his left eye and that he was totally disabled from December 7, 1929, to January 21, 1930, and ordered the petitioners to pay the respondent compensation for 100 weeks for the loss of his left eye and for the period of 5 weeks and 5 days for compensation for temporary total disability.

The petitioners at the time of the accident were running a gasoline filling station and a shop where automobile tires and tubes were repaired. The filling station was a two-room building with three gasoline pumps. The air came from a compressor. One of the rooms was used for a repair shop. The respondent was putting air in a tire that he had repaired; the air was coming from a compressor. The tire blew out, throwing a small substance about the size of a pin head in his left eye. He immediately went into the wash room and one of his associates took a towel that had been used by the public generally and removed the substance from his eye. The accident occurred on December 5th; he worked until about 9 o'clock p. m. on that day, he returned to work on the 6th. He went to a doctor at noon on the 6th and again on the 7th. The doctor sent him to the hospital, and it was discovered that he had a gonorrheal infection in his eye. He stayed at the hospital 21 days, after which he went home for about three weeks, and he went back to the hospital and it was necessary to remove the ball of the eye.

The petitioners urge that there is no evidence that the filling station and repair shop is a workshop where machinery is used, as defined by the Industrial Act. For the first time our attention is called to paragraph 1 of section 7295, C. O. S. 1921, and it now becomes our duty to interpret its meaning. The section is as follows:

"Certain presumptions in absence of evidence.—In any proceeding for the enforcement of a claim for compensation under this act, it shall be presumed in the absence of substantial evidence to the contrary:

"1. That the claim comes within the provisions of this act."

A similar provision is contained in the New York Industrial Act, and the Court of Appeals of New York construed it in the Matter of Larsen v. Paine Drug Co., 112 N. E. 725. In that case the evidence disclosed that the employer conducted a wholesale and retail drug store. The employee was engaged in the capacity of "porter, elevator, and handy man," and his work consisted of the ordinary work of a porter and elevator man; he took in freight and packed the goods to be sent out by freight or express, drew acids, did carpenter work and various small repairs, and in fact all the various and varied work that an unusually intelligent handy man could do about the drug store. In the body of the opinion the court said:

"It is now urged that it did not appear, first, that the employer was carrying on the hazardous business indicated in group 28, or, second, that the deceased at the time of his death was engaged in any work in the course of or connected with such hazardous

employment, even though said business was carried on by the employer. It may be assumed that the statements made by the employer and taken into account in making the finding that it was engaged in carrying on the hazardous business in question are not conclusive. It is possible that, if the Commission had been compelled to base a finding solely on said statement, it would not have been strictly justified in drawing the conclusion that the employer was doing anything more than conducting a store for the wholesale and retail sale of drugs and chemicals. But the statute declares that there shall be a presumption that such a claim as this comes within the provisions of the statute 'in the absence of substantial evidence to the contrary.' Section 21. Without attempting to determine just how broad an interpretation should be given to this provision in respect of all questions which might arise in the course of such a claim as this, it is clear that it should be construed as compelling the Commission and ourselves to presume that the business conducted by the employer was within the provisions of the statute defining hazardous employment in the absence of some substantial evidence to the contrary. We do not think that any such substantial evidence overturning this presumption was furnished by the appellants. The business described in the statements before the Commission certainly approached very closely to the business of manufacturing drugs and chemicals, and if it was not the fact that such manufacturing was carried on, it would have been very simple, and we think it was necessary, to show affirmatively that the business did not include such feature. This was not done, and the Commission was entitled to draw the conclusion which it did."

The headline to section 7295, supra, is as follows: 'Certain presumptions in the absence of evidence." This section clearly shows that it was the intention of the Legislature to give to the claimant the advantage of certain presumptions in the absence of substantial evidence to the contrary and to change the ordinary rule in reference to establishing a cause of action. If a claim is filed for compensation under the act, under this statute it is presumed that the business conducted by the employer is within the provisions of the act defining hazardous employment in the absence of substantial evidence to the contrary. If there be no such evidence, then clearly it was the intention of the Legislature to relieve the claimant from proving that his employer was conducting a business that was within the provisions of the act. This we think was the holding of the New York court in the Paine Drug Company Case, supra, and we think the rule announced therein is the correct interpretation. It is clear that this act should be construed as compelling the Commission and this court to presume that the business conducted by the employer was within the provisions of the statute in the absence of some substantial evidence to the contrary. In the case at bar there is no such evidence overturning the presumption, and since there is none, the Commission was entitled to draw the conclusion which it did. What evidence there was indicated the employer's business was within the act, and there is none to the contrary.

It is next contended that there is no competent evidence in support of the finding of the Commission that the loss of the respondent's eye was due to the original injury. Paragraph 7 of section 7284, O. O. S. 1921, as amended by chapter 61, sec. 2, of the Session Laws of 1923, is as follows:

" 'Injury or personal injury, means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom."

It has already been established that the employer of claimant was engaged in a business that was within the act, and the evidence clearly shows that claimant received the original injury while engaged in the course of his employment. There is no presumption that the loss of claimant's eye was the result of the original injury received by him. The burden was on him to establish by competent evidence to the satisfaction of the Industrial Commission that the loss of the eye came from a disease or infection as may naturally result from the original injury.

The claimant was struck in the eye by a foreign substance while filling a casing with air and the substance was removed with a towel taken from the wash room of the filling station. The testimony of the doctors is to the effect that the loss of the eye resulted from a gonorrheal infection. The evidence discloses that before the accident the respondent was in good health and was in no way affected with the disease. It came by infection. The effect of the testimony of the doctors is that the infection more likely resulted from the wiping of the eye with the towel. We do not think this question is free from doubt, but the courts of other states have had occasion to consider cases of this character. A very similar one was before the Supreme Court of Michigan in the case of Cline v. Studebaker, 155 N. W. 519. There it was said:

"As has been said, the claimant was himself perfectly free from the disease up to

the time of the accident. Such was the testimony of the doctor who attended him, and the Industrial Accident. Board has found it to be a fact; nor does counsel for the defendants dispute the correctness of the finding. The gonorrheal germ must have come from some outside source. It must also have been received not later than the time of the accident to have developed into the condition found by the doctor two days afterwards, according to his testimony. These conditions, in connection with the fact. as shown, that an injured eye is more susceptible to the infection than a normal eye and with the further fact that at once after the accident a fellow workman examined the eye, using for the purpose a match wrapped in a piece of cloth, creates a considerable degree of probability that the germ got into the eye in the attempt to remove the steel. And this probability was sufficient to warrant the board in their finding, * * *"

It seems to us that the rule announced by the Michigan court is correct, and we think the facts in the case at bar bring it within the rule announced in that case.

The petition to vacate the award of the Commission is denied.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J.. concurs in conclusion.

Note.—See under (1) 28 R. C. L. p. 718; R. C. L. Perm. Supp. p. 6187. (2) 20 A. L. R. 28; 28 R. C. L. p. 827; R. C. L. Perm. Supp. p. 6252; R. C. L. Continuing Perm. Supp. p. 1210.