DALTON BARNARD HDWE. CO. et al. v. GATES et al.

No. 33518.   March 14, 1950.

Rehearing Denied July 11, 1950.

*220 P. 2d 249.*

Cheek, Cheek & Cheek, of Oklahoma City, for petitioners.

Claud Briggs, of Oklahoma City, for respondent Betty Gates.

Mac Q. Williamson, Atty. Gen., for respondent State Industrial Commission.

Keaton, Wells, Johnston & Lytle, of Oklahoma City, amicus curiae.

LUTTRELL, J. On February 4, 1948, the State Industrial Commission, sitting en banc, affirmed an award for temporary total disability theretofore made by a trial commissioner, in favor of claimant, Betty Gates, against her employer, Dalton Barnard Hardware Company, and its insurance carrier. Thereupon the employer and its insurance carrier brought this original proceeding in this court to review the award.

Petitioners first contend that the evidence does not support the finding that claimant's injury was accidental, and arose out of and occurred in the course of her employment. From the record it appears that Dalton Barnard Hardware Company is engaged in the retail hardware and furniture business in the city of Holdenville; that its store is located on two floors of the building occupied by it, and that on the second floor of said building it had set apart a portion of the space occupied by it for the purpose of making draperies and slip covers for furniture; that on the date she was injured claimant was engaged in fitting a slip cover upon a chair which had been sent to the hardware store to have a slip cover made for it, and that while engaged in such occupation one of her employers came up and reprimanded her, as she testified, in a loud and hard voice, or, as she put it, "raged at her"; that she became frightened and fainted and fell, injuring her back; that thereafter she was sent to a hospital and was attended by a physician.

The physician who attended her testified that in his opinion her fainting spell was caused by abnormally high blood pressure; that when he first examined her in the store her blood pressure was extremely high, and that after she regained consciousness at the hospital her temperature was normal and her blood pressure much lower. He testified that he had treated her and examined her subsequent to her injury and that her blood pressure at the times he examined her was normal. He further testified that the only reason he could find for the abnormal elevation in her blood pressure at the time of her injury was excitement, because her blood pressure since then was normal, and that such abnormal elevation of blood pressure in his opinion caused her to faint and become unconscious. That the fall which she sustained injured her back and totally disabled her is not seriously questioned. Physicians who examined her testified that as a result of the fall she had a spinal injury and was totally disabled; that such disability was temporary, and that she could be cured by an operation.

Petitioners urge that where there is no evidence that the work in which she was engaged subjected the claimant to any serious strain, a stroke, which may or may not have been brought on by strain or overexertion, is not an injury suffered by accident, citing Schneider's Workmen's Compensation, vol. 4, p. 475; Marion Machine Foundry & Supply Co. v. Redd, 115 Okla. 30, 241 P. 175; National Biscuit Co. v. Lout, 179 Okla. 259, 65 P. 2d 497, and cases from other jurisdictions.

In Marion Machine Foundry & Supply Co. v. Redd, supra, the evidence showed that there was no causal connection between the employment of the claimant and his injury, but that, being subject to epileptic fits, he was seized

with one while working and fell in such a way that his hand was burned in a fire nearby. We held that such injury was not compensable.

In National Biscuit Co. v. Lout, supra, and in Phillips Petroleum Co. v. Eaves, 200 Okla. 21, 190 P. 2d 462, we held that an injury sustained by claimant, due to no apparent reason or cause, except that he stooped over when reaching for an object, was not within the Compensation Act.

The instant case is distinguishable from these cases in that the cause of the sudden rise of claimant's blood pressure, as testified to by her and her physician, was excitement brought about by the verbal assault which she testified was made upon her by her employer, which caused her to temporarily lose consciousness and fall, resulting in the injury to her back. There is no testimony in the record that she had theretofore suffered from high blood pressure, and the testimony was that thereafter she did not.

In Pawnee Ice Cream Co. v. Price, 164 Okla. 120, 23 P. 2d 168, we held that one injured as the result of an unwarranted physical assault upon him by a fellow employee while engaged in his employment, and who sustained an injury as the result thereof, was injured in the course of his employment within the meaning of the Compensation Act.

In Northwestern Refining Co. v. State Industrial Commission, 145 Okla. 72, 291 P. 533, we held that a person who, while engaged in his work, became frightened by an explosion nearby and jumped from the ladder upon which he was working, sustaining an injury as a result thereof, was within the Compensation Act, although the evidence showed that at the time of his injury he was suffering from an existing nervous condition which made him excitable and easily frightened. We held that the explosion was the cause of his jumping from the ladder, and that the injury sustained as the result thereof was one arising in the course

of and out of his employment. This decision was cited with approval of Protho v. Nette, 173 Okla. 114, 46 P. 2d 942.

In Winona Oil Co. v. Smithson, 87 Okla. 226, 209 P. 398, we said:

"The term 'accidental injury' as used in the act must not be given a narrow meaning, but, according to the great weight of English and American authorities, the term is to receive a broad and liberal construction, with a view of compensating injured employees, where the injury results through some accidental means, was unexpected and undesigned, or may be the result of mere mischance or of miscalculation as to the effect of voluntary action."

This definition of an accidental injury has been followed in numerous cases. Ward v. Beatrice Creamery Co., 104 Okla. 91, 230 P. 872; Wilson & Co. v. McGee, 163 Okla. 99, 21 P. 2d 25; Special Indemnity Fund v. McFee, 200 Okla. 288, 193 P. 2d 301.

Applying the rules announced in these decisions to the facts established in the instant case, we are of opinion that the injury sustained by claimant was an accidental injury, and that it arose out of and in the course of her employment.

Petitioners next contend that the evidence wholly fails to show that claimant at the time of her injury was engaged in a hazardous occupation, and therefore covered by the provisions of the Compensation Law, citing J. B. Herd Hardware Co. v. Kirby, 160 Okla. 2, 15 P. 2d 823; Plaza Grill v. Webster, 182 Okla. 533, 78 P. 2d 818; McClung v. Colclasure, 197 Okla. 445, 172 P. 2d 623, and Hurley v. O'Brien, 192 Okla. 490, 137 P. 2d 592.

Claimant relies principally upon Harbour-Longmire-Pace Co. v. Industrial Commission, 147 Okla. 207, 296 P. 456. Claimant also cite cases such as Beatrice Creamery Co. v. Industrial Commission, 174 Okla. 101, 49 P. 2d 1094, and Voss Brothers Dairy v. Gardner, 195 Okla. 118, 155 P. 2d 727, holding that the business of an employer may

be conducted in separate departments, some of which come within the act and others which do not.

From the evidence it appears that the manner in which the business of the employer in the instant case was conducted was markedly similar to that which was shown in Harbour-Longmire-Pace Co. v. Industrial Commission, supra. In that case the employer was operating a retail furniture store in the city of Shawnee, in which it kept goods for sale. Also, in connection with its business it fabricated or manufactured draperies and curtains from materials on hand, and repaired furniture bought by it for sale, and furniture repossessed by it after having been sold on conditional sale. In its drapery department it had a motor-driven ordinary type sewing machine, and in its repair department a large size foot power sewing machine and a paint gun operated by an electric motor. Claimant worked in the department which upholstered and refinished furniture, helped hang draperies and did other work of a similar nature. We held that in so far as it manufactured curtains and draperies the employer in that case was within the terms of the act defining a factory, and that the shop where furniture was repaired and upholstered was a workshop where machinery was used.

In the instant case the evidence shows that claimant was a saleslady in the store; that she also had charge of the branch of the business which fabricated draperies and made and fitted slip covers to furniture. The making of slip covers was not confined solely to the making of such covers for furniture owned by the store, but slip covers were also made for furniture sent to the store for that purpose by customers. In the process of making slip covers and draperies a power-driven sewing machine was used, and the work of making slip covers and draperies was done principally by claimant with the assistance of another employee.

In Hurley v. O'Brien, supra, relied upon by petitioners, we did not, as contended by petitioners, overrule the decision in Harbour-Longmire-Pace Co. v. Industrial Commission. We distinguished the situation involved in that case from the situation involved in Hurley v. O'Brien, pointing out that the electric sausage grinder and meat slicer operated in the meat market of the retail grocery business of the employer in that case was placed therein and used therein as an incident to the retail business of the employer, and to better effectuate and carry out the business of the retail vending of meats. Obviously the making of draperies and slip covers was not incidental to the business of selling at retail hardware and furniture, although the cloth used for draperies and slip covers was, so far as the record shows, owned and furnished by the hardware company. But the business conducted in that department was separate and distinct from the remainder of the business carried on by the hardware company, just as the business of making draperies and repairing and re-upholstering furniture was in the business of the Harbour-Longmire-Pace Company.

In view of our holdng in the Harbour-Longmire-Pace Company case, which so far as we have been able to find, has never been overruled or disaffirmed by this court where a similar factual situation was involved, we conclude that the claimant in the instant case was at the time of her injury engaged in a hazardous occupation and was covered by our Workmen's Compensation Act.

Petitioners and amicus curiae call attention to Montgomery Ward & Co. v. Industrial Commission, 201 Okla. 165, 203 P. 2d 432; Kirkpatrick v. Hixon, 201 Okla. 118, 202 P. 2d 703; Great Atlantic & Pacific Tea Co. v. McHan, 162 Okla. 8, 18 P. 2d 875; Sims v. St. Anthony's Hospital, 180 Okla. 385, 69 P. 2d 1040, and Plaza Grill v. Webster, supra, as cases which, by the announcement of a contrary rule, in effect overruled the Harbour-Longmire-Pace Company case. Examination of these cases discloses that they involved

factual situations dissimilar to those in the Harbour-Longmire-Pace Company case, so that the rule announced in that case had no application.

In McClung v. Colclasure, supra, we held that the principal business of the employer was hazardous, and that the employment was not a mere incident to the operation of the business, but was in fact the principal operation of the business itself.

Counsel amicus curiae in their brief urge that if we hold that claimant in the instant case was within the Compensation Law, we place the retail merchants of the state in a position where they are wholly unable to determine whether or not their employees come within the protection of that law. We are unable to perceive the reason for this assertion, since, if a retail merchant operates a separate and comparatively distinct department as a factory or workshop he should have no difficulty in determining the status of those employees who were employed therein. Under our decisions, the fact that a retail merchant did conduct such workshop as a separate department would not affect the status of employees in the departments where only retail sales were conducted, or where the operation of certain tools or machinery was simply incidental to the business of retail sales.

We reaffirm the rule announced in Harbour-Longmire-Pace Company v. Industrial Commission, to the effect that the repairing, re-upholstering, or re-covering of furniture, when carried on for profit, is not merely incidental to the retail selling of furniture and hardware. Whether the rule announced applies in a particular case depends upon the facts and circumstances in that case as disclosed by the evidence.

Award sustained.

ARNOLD, V. C. J., and WELCH, CORN, and JOHNSON, JJ., concur. DAVISON, C. J., and GIBSON, HALLEY, and O'NEAL, JJ., dissent.

HALLEY, J. (dissenting). From the passage of the Workmen's Compensation statute in 1915 down to the present day, our Legislature has not seen fit to bring retail mercantile establishments under its provisions, and this court has so held in a number of decisions, among which are Veazey Drug Co. v. Bruza, 169 Okla. 418; Great Atlantic & Pacific Tea Co. v. McHan, 162 Okla. 8, 18 P. 2d 875; Rorabaugh-Brown Dry Goods Co. v. Mathews, 162 Okla. 283, 20 P. 2d 141. There is no question here but that the petitioner, Dalton Barnard Hardware Company was a retail hardware and furniture store. The majority opinion brings them under the Workmen's Compensation Act because they sewed slip covers and draperies on an ordinary sewing machine on a balcony in the store. If this constitutes a workshop, of course, petitioner is liable. If it does not, the award should be vacated. Under section 2, Title 85, O.S. 1941, the employments which come under the Workmen's Compensation Act are listed as follows:

"Factories, cotton gins, mills and workshops where machinery is used; . . ."

And further:

". . . wholesale mercantile establishments. . . ."

This shows clearly that retail establishments were not included, as we have held. In section 3, subparagraph 11, the Legislature has defined a "workshop" as follows:

" 'Workshop' means any premises, yard, plant, room or place wherein power-driven machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise, or incidental to the process of making, altering, repairing, printing, or ornamenting, cleaning, finishing, or adopting for sale or otherwise, any article, or part of article, machine, or thing over which premises, room or place the employer of the person working therein has the right of access or control."

We have construed these provisions in several cases. In Southwestern Grocery Co. v. State Industrial Commission et al., 85 Okla. 248, 205 P. 929, we held that a retail grocery store did not come under the Act as to an employee who was working in the meat department, which had an electric sausage grinder in it. In that case the claimant was cleaning chickens when he cut himself with a knife. In the case at bar the claimant was a saleslady whose duties were not confined to the sewing machine, and she was not injured while using the sewing machine. In Sims v. St. Anthony Hospital et al., 180 Okla. 385, 69 P. 2d 1040, in a case where the claimant was injured while loading a garbage can onto a truck after having cleaned an electric dish-washing machine at the hospital, we said:

"We are of the opinion, and hold, that the fact that there was an electric dish-washing machine in the kitchen of the hospital did not constitute it under the law a workshop where machinery was used."

In Plaza Grill et al. v. Webster et al., 182 Okla. 533, 78 P. 2d 818, we held that a restaurant was not covered by the Workmen's Compensation Act, and that ordinary kitchen appliances, including a carbonator, a mixing machine with an attachment to grind meat, and a meat slicing machine, all operated by electric motors, did not transform a kitchen into a "workshop," under the Act, so as to put liability on the owner for an injury sustained by an employee. We also held in Great Atlantic & Pacific Tea Co. et al. v. McHan, supra, that an electric coffee grinder and an electric meat grinder did not make a retail grocery store a workshop.

In Hurley v. O'Brien et al., 192 Okla. 490, 137 P. 2d 592, we hold that the presence and use of an electric sausage grinder and an electric meat slicer did not transform the meat department of a retail grocery and meat market into a "workshop where machinery is used". This case overruled the earlier case of Sunshine Food Stores v. Moorehead, 153 Okla. 301, 5 P. 2d 1066, which held that a meat market was a workshop where a power-driven meat grinder was used and that employee therein was covered though not injured by the meat grinder.

The majority opinion relies upon the case of Harbour-Longmire-Pace Co. v. State Industrial Commission, 147 Okla. 207, 296 P. 456. Without discussing the soundness of that decision, I say that the case at bar is distinguishable from it. In Harbour-Longmire case it was a retail furniture store, but they repaired and upholstered furniture, new and repossessed, using a large foot-powered Singer sewing machine, and in the repair department used an electrically-operated paint gun. I question the soundness of that decision; and certainly the rule laid down therein should not be extended any further. As was said in Hurley v. O'Brien et al., supra:

". . . In the Harbour-Longmire-Pace Co. v. State Industrial Commission case, supra, we had the situation where a separate business was set up and being operated in connection with the retail business rather than the presence of equipment which was incidental to the real business of the retail store."

No such situation exists in this case, as the sewing of slip covers and draperies was an integral part of the furniture business in which petitioners were engaged. The effort of the majority opinion to distinguish between the case at bar and Hurley v. O'Brien by saying that an electric sausage grinder and meat slicer in the meat department of a retail grocery store was incidental to the business, while an ordinary electric sewing machine used in a hardware and furniture store to sew slip covers and draperies was not, is fallacious.

Under the majority opinion, every department of a retail store which has and uses a sewing machine becomes ipso facto a workshop. In my humble opinion, the Legislature never intended such and did not say it.

I dissent.