**SKELLY OIL COMPANY, a Corporation, Own Risk Carrier, Petitioner,**

v.

**George A. WATERS and State Industrial Commission of the State of Oklahoma, Respondents.**

**No. 38523.**

Supreme Court of Oklahoma.

Nov. 17, 1959.

Rehearing Denied Jan. 12, 1960.

**322**

Louis B. Gresham, James A. Robinson and Ralph L. Cunnyngham, Tulsa, for petitioner.

Grady H. Holloway, Oklahoma City, for respondents.

WILLIAMS, Vice Chief Justice.

This is an original proceeding to review an order of the State Industrial Commission, sitting en banc, sustaining an award of the trial commissioner to George A. Waters, hereinafter referred to as claimant, against his employer, Skelly Oil Company, hereinafter referred to as Skelly, for compensation for an injury occurring in the course of his employment.

Claimant was employed by Skelly as manager and operator of a service station in Oklahoma City. On September 17, 1957, claimant attempted to raise the hood of a car on the station driveway. The hood was stuck and when it came loose it threw him backwards. Claimant fell to the pavement, injuring the lower part of his back. Claimant continued working the day of the injury and most of the following day. He was sent to Dr. B in the afternoon of that day. Dr. B hospitalized claimant in a clinic for five days. He was released by the doctor for light duty on October 8, 1957. He returned to work on October 9, 1957, and worked until December 6, 1957. Dr. B released claimant with no permanent disability on December 13, 1957.

Claimant did not work again until April, 1958. Between April and July, 1958, claimant worked two or three days a week trucking and selling fruit. While on a trip to sell fruit, in April, 1958, in lifting quart boxes of strawberries, his back "went out" completely. In July, 1958, on a trip to Colorado to get apricots, while sitting and talking, his back "went out" again. Since then he has not worked because of his back.

On September 17, 1958, claimant was examined by Dr. M who gave an opinion that claimant should be considered for surgery for a ruptured intervertebral disc. Dr. M's opinion was that claimant was temporarily totally disabled, and related such disability to the injury on September 17, 1957.

The trial commissioner made the following finding: 1. That in addition to running a service station, respondent (Skelly) engaged in both wholesale and retail trade in gas and oil; 2. That respondent also engaged in running a workshop where mechanical work was done and charges made to the public for said service. The trial commissioner further found that claimant sustained the injury as alleged; that claimant was temporarily totally disabled from September 18, 1957, and awarded compensation therefor. This order was sustained by the Industrial Commission sitting en banc. Skelly appeals from such order.

It is well established that the jurisdiction of the State Industrial Commission to award compensation for disability resulting from injury is confined to the employments enumerated by the compensation act. Burger v. Lickliter, Okl., 319 P.2d 594.

Automobile service stations are not listed in such act, 85 O.S.1951 § 2; and in Rider v. Bob Hiner Service Station, Okl., 321 P.2d 378, we held that the operation of

a retail oil and gas filling station is not one of the plants, industries, or occupations defined as hazardous under the Workmen's Compensation Law.

Claimant contends that the business conducted at this service station consisted of both retail and wholesale sales, and that by virtue of the wholesale business, it is to be classified as a wholesale mercantile establishment which is enumerated in such act.

To support this argument, claimant testified that he made sales of commodities at wholesale prices at this station. No further evidence was introduced to show this business to be a "wholesale mercantile establishment" other than claimant's said testimony.

We distinguished the terms "wholesale" and "retail" in Veazey Drug Co. v. Bruza, 169 Okl. 418, 37 P.2d 294, 296, wherein we stated:

> "The term 'wholesale' or the selling in or by unbroken parcels is distinguished from 'retail' or dividing into smaller quantities and selling direct to consumers * * *"

Webster's Dictionary defines "wholesale" as "pertaining to, or engaged in, trade by the piece or large quantity; selling to retailers or jobbers rather than consumers".

We must conclude that "wholesale mercantile establishment" as used in this Act (85 O.S.1951 § 2) means a business concern that primarily sells to jobbers or retailers in relatively large quantities or in unbroken lots for resale, and which does not ordinarily in the conduct of its business sell individual or single items directly to the consumer. The test is not the quantity of goods or the prices charged, but the nature of the sale, i. e., whether it is for resale or for consumption.

In Hurley v. O'Brien, 192 Okl. 490, 137 P.2d 592, we stated that isolated sales by a retail establishment do not constitute the same as a wholesale mercantile establishment.

Claimant testified that Skelly's business at this location was sales to the public.

In view of the foregoing, we find that there was insufficient evidence to warrant a finding that Skelly's business at this location was a "wholesale mercantile establishment".

Claimant further contends that "a retail service station, not included as a hazardous employment under the statute, which maintains a place where machinery is kept and manual and mechanical work is done and charges made therefor, is a workshop within the meaning of the Workmen's Compensation Act" (85 O.S.1951 § 1 et seq).

In support of this argument, claimant cites Bishop v. Wilson, 147 Okl. 224, 296 P. 438. Upon review of the opinion in that case, it does not support claimant's argument. That decision, although involving an injury of a filling station employee sustained while repairing a tube or tire, was based on the presumption that upon filing a claim, the employer's business is presumed to come within the Act. This rule has been modified. See Enid Cemetery Ass'n v. Grace, 177 Okl. 320, 59 P.2d 284; Oklahoma Tire & Supply Co. v. Summerlin, Okl., 290 P. 2d 403.

In order to show that this station constituted a "workshop" as defined by 85 O.S. 1951 § 11, claimant testified that he kept a set of small tools, there was a tire repair kit (not power driven), an iron man, and a hydraulic hoist, or grease rack, used in lubricating cars. Claimant also testified that he adjusted brakes, greased and washed cars, made minor repairs such as replacing points, and installed batteries and accessories sold through the station.

The term "workshop" is defined by statute, 85 O.S.1951 § 3(11) as:

> " 'Workshop' means any premises, yard, plant, room or place wherein machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise, or incidental to the process of making, altering, repairing, printing or ornamenting, cleaning, finishing, or adopting for sale or otherwise, any article, or part of article, machine or thing over which

premises, room or place the employer of the person working therein has the rights of access or control."

It is apparent from our decisions that the mere presence of machines or appliances is not the test for a workshop. In Hurley v. O'Brien, 192 Okl. 490, 137 P.2d 592, 595, quoting from the opinion in Southwestern Grocery Co. v. State Industrial Commission, 85 Okl. 248, 205 P. 929, 931, we said:

" 'We are of the opinion that in the instant case the fact that the petitioner operated an electric sausage grinder in the meat market did not render the entire store a workshop', since the rule so announced is consonant with both reason and the facts. Reflection will demonstrate what we mean. A retail meat market is one for vending meats at retail. The purpose of the equipment therein is to better effectuate and carry out the business of retail vending of meats, and whether such equipment is operated by hand or an electric motor is immaterial; so far as the nature of the business is concerned it still continues to be a retail meat market and nothing more. This was the effect of our holding in Plaza Grill v. Webster, 182 Okl. 533, 78 P.2d 818. Enid Cemetery Ass'n v. Grace, 177 Okl. 320, 59 P.2d 284; Sims v. St. Anthony Hospital, 180 Okl. 385, 69 P.2d 1040."

In McClung v. Colclasure, 197 Okl. 445, 172 P.2d 623, 624, we stated:

"It may be seen therefore in overruling Sunshine Food Stores v. Moorehead, supra [153 Okl. 301, 5 P.2d 1066], the court laid down the rule that power driven machinery which was a mere incident to the operation of the business not listed as hazardous in which an injured employee was employed did not make such business hazardous."

This rule was followed in Wilde v. Physicians & Dentists Bldg. Co., 197 Okl. 683, 174 P.2d 382, and Parlor v. John Mongold Drive-In Cafe, 204 Okl. 458, 230 P.2d 887.

Skelly's business at this location was the sale of petroleum products and accessories to the public, and to sell certain services, such as greasing, washing, adjusting brakes and points, and fixing flats. In none of these operations were power machinery used, only simple hand tools. The use of the hydraulic hoist was incidental to such service. Its use was a means of providing more efficient service, an improvement over the old style grease pits. In this case the "machine" is not used to perform the service rendered. It cannot be said that claimant's employment was rendered hazardous merely because the hydraulic hoist was used to facilitate the rendering of the service.

We are of the opinion that the use of a hydraulic hoist in connection with the services of this filling station does not sustain the commission's finding that Skelly was operating a workshop.

This court in reviewing an award of the State Industrial Commission concerning a jurisdictional question, will weigh the evidence relating thereto and make its own independent findings of fact. Mahl v. McMahan, Okl., 325 P.2d 78; Williams v. Branum, 192 Okl. 129, 134 P.2d 352.

In view of the above we find that claimant was not employed in a hazardous employment under 85 O.S.1951 §§ 2, 3 and 11, and that the award should be vacated.

Award vacated.

WELCH, HALLEY, JOHNSON and JACKSON, JJ., concur.

BLACKBIRD, IRWIN and BERRY, JJ., dissent.

BERRY, Justice (dissenting).

I am unable to agree with the majority opinion on the issue of whether claimant was engaged in hazardous employment at the time the accidental injury was sustained.

I agree with the majority's statement that "Skelly's business at this location was the sale of petroleum products and accessories to the public, and to sell certain services,

such as greasing, washing, adjusting brakes and points, and fixing flats." I am, however, unable to agree with the statement that follows to the effect that "In none of these operations were power machinery used, only simple hand tools." A hydraulic hoist is directly used in greasing automobiles, changing the oil in motors, adjusting brakes and replacing brake linings, repacking front wheel bearings, rotating tires, replacing mufflers, replacing exhaust pipes and in inspecting the under-portion of automobiles in order to make necessary adjustments or repairs. It is patent that in using said hoist in changing oil it is directly used in selling the new oil that replaces the old and it is, of course, directly used in selling differential grease, transmission oil and chassis-greasing service. The service of greasing, changing oil, washing, inspecting and replacing mufflers (and other parts) and rotating tires unquestionably furthers the sale of gasoline, mufflers, tires and other accessories. Therefore, to my way of thinking, the fact that the hydraulic hoist is an integral part of the filling-station business conducted by Skelly at the location where claimant was injured is free from doubt. I am also of the opinion that the matter of installing mufflers, exhaust pipes, spark plugs, ignition points, and repacking wheel bearings constitutes a mechanical service in competition with garages.

I am of the further opinion that the filling-station premises constituted a "workshop" within the statutory definition of said term to the effect that "'workshop' means any premises, yard, plant, room or place wherein machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise." See 85 O.S.1951 § 3(11).

In Bishop v. Wilson, 147 Okl. 224, 296 P. 438, 439, this Court stated in effect that proof that the employer at the time of the injury was "running a gasoline filling station and a shop where automobile tires and tubes were repaired"; that "The filling station was a two-room building with three gasoline pumps"; that *The air came from*

*a compressor*"; that "one of the rooms was used for a repair shop"; that "The respondent (at the time of the injury) was putting air in a tire that he had repaired, the air was coming from the *compressor*" failed to overcome the statutory presumption that the claimant was engaged in hazardous employment at the time of injury. As pointed out in Enid Cemetery Ass'n v. Grace, 177 Okl. 320, 59 P.2d 284, 285, positive testimony "renders inapplicable the rule relative to presumption" and it follows that if the above quoted facts in the Bishop case had served to establish that the claimant in that case was not engaged in hazardous employment, said facts would have overcome the statutory presumption that is referred to in said case.

In Southland Refining Co. v. State Industrial Commission, 167 Okl. 3, 27 P.2d 827, the claimant who was employed in a filling station was denied recovery under these facts:

"* * * The station where the claimant worked consists of one small room and two toilet rooms. There are three oil containers for lubricating oil in the front room. There are two gasoline tanks under the ground. The claimant had nothing to do with the placing of gasoline in tanks or the delivery of the oil containers to the station. Nothing is sold in the station except gas, oil, and transmission grease. *No repair work is done at the station, and no cars are greased there.* There are two gasoline pumps on the driveway from which gasoline is pumped into cars. One of those pumps is a hand pump, and the other one is controlled by compressed air. There is a compressor which compresses the air into a compressed air chamber. It is automatically operated. If it gets out of order, the company sends a man to service it. The claimant has nothing to do with it except to drop some oil on it occasionally. * * *" (Emphasis supplied.)

In distinguishing the Southland Refining Co. case from the Bishop case this was said:

"* * * The facts therein were different from the facts in this case. In that case there was a separate room or shop where automobile tubes and tires were repaired and where more than one person was employed. A tire that the claimant therein had repaired blew out while he was putting air into it and blew a small object into his eye. There was nothing therein to show that the place was not a workshop where machinery was used. * * *"

In the instant case the claimant operated the hydraulic hoist and assisted in performing all other manual tasks that were performed at the station. The fact that he was not engaged in operating the hoist at the time of his injury is without significance. Wilson & Co., Inc., of Oklahoma v. Musgrave, 180 Okl. 246, 68 P.2d 846, and Oklahoma Natural Gas Co. v. Nickens, 199 Okl. 622, 189 P.2d 184.

The only evidence in Rider v. Bob Hiner Service Station, Okl., 321 P.2d 378, that would tend to show that the filling station was a workshop was evidence that the gasoline pumps were operated by electrically driven machinery, which evidence was held insufficient to establish that the filling station was a "workshop" within the purview of the applicable statute. The facts of the cited case serve to distinguish the case from this case.

I will refer to a few of the many cases that I believe sustain the Industrial Commission's finding in the instant case that claimant was engaged in hazardous employment. In Folsom Auto Supply v. Bristow, Okl., 275 P.2d 706, 710, the claimant "was engaged in performing work in connection with the repair of automobile bodies and fenders at the time he sustained the injury; that the shop in which he was working was equipped with electric driven machinery and a large [air] compressor which he used in connection with his work." The injury occurred "while (claimant) was pushing a car out of the driveway entering into the auto supply shop". The claimant was held to be engaged in hazardous employment at the time of the injury. In Dalton Barnard Hardware Co. v. Gates, 203 Okl. 268, 220 P.2d 249, 252, it is stated that the evidence in that case showed "that claimant was a saleslady in the store; that she also had charge of the branch of the business which fabricated draperies and made and fitted slip covers to furniture. The making of slip covers was not confined solely to the making of such covers for furniture owned by the store, but slip covers were also made for furniture sent to the store for that purpose by customers. In the process of making slip covers and draperies a *power driven sewing machine* was used, and the work of making slip covers and draperies was done principally by claimant with the assistance of another employee." The claimant who was injured while fitting a slip cover upon a chair, was held, because of the presence of the power driven sewing machines, to have been engaged in hazardous employment at time of injury. To same effect see Harbour-Longmire-Pace Co. v. State Industrial Commission, 147 Okl. 207, 296 P. 456. See also Halliburton Oil Well Cementing Co. v. State Industrial Comm., Okl., 330 P.2d 222 and Board of County Commissioners of Tulsa County v. Horne, Okl., 288 P.2d 406.

In the instant case the hydraulic hoist was an integral part of the filling-station business and was not merely incidental thereto. The use made of the hoist, which use included repair work on automobiles such as replacing manifolds and exhaust pipes, and the many manual tasks performed at the station which could lead to injuries, causes me to conclude that the filling-station "premises" at the time of the accident in controversy constituted a "workshop" within the statutory definition of said word. To my way of thinking, the instant case is readily distinguishable from the "grocery store cases" that the majority appears to believe decisive of this case.

Here claimant was engaged in mechanical work (work similar to that done in garages) as well as non-mechanical work (selling gasoline, oil and greases), while in the grocery store case the claimants were engaged in non-mechanical work.

I am authorized to state that Justices BLACKBIRD and IRWIN concur in the foregoing dissenting view.