Oscar NEAL, Petitioner,

v.

SEARS, ROEBUCK & COMPANY,
Respondent, Own Risk,
Insurance Carrier.

No. 50292.

Supreme Court of Oklahoma.

April 4, 1978.

Rehearing Denied May 31, 1978.

Guy A. Secor, Oklahoma City, for petitioner.

William H. Henderson, Oklahoma City, for respondent.

BARNES, Justice:

Petitioner, hereinafter Claimant, seeks review and vacation of an order denying claim for compensation for accidental injuries received during course of employment. Claimant worked in a retail automotive center operated by Respondent, an Own Risk employer. Injury occurred as result of battery acid splashing unto Claimant's hands and face while working with automobile batteries in June, 1975. Respondent operated as an Own Risk employer, listing 4,376 employees of "Catalogue Order & Retail Department Stores" in Oklahoma, 85 O.S. 1971, § 61(d).

In defense of this claim, Respondent denied injury occurred during engagement in hazardous employment, and alleged lack of State Industrial Court jurisdiction.

The order now reviewed was entered upon consideration and recognition of matters decided in *Miller v. Sears, Roebuck & Company,* 550 P.2d 1330 (Okl.1976), which became final June 28, 1976. Two matters advanced on review address this Court's interpretation of 85 O.S.1971, § 65.2, the estoppel Act. Arguments alleged unconstitutional construction placed upon this statute, in relation to other pertinent provisions of the Act, has resulted in denial of equal protection of law. These arguments were foreclosed by decision in the *Miller case, supra,* and need not be discussed.

An area of concern does arise from the issue whether Claimant was engaged in hazardous employment within meaning of Sections 2 and 3 of the Act. Evidence was presented to the Trial Court showing use of power tools in Respondent's automotive department. Claimant contended that this made employment hazardous, constituting a workshop as defined by statute, Section 3(11). Respondent defended on the ground the operation simply was a retail service station not enumerated as hazardous employment; and that absence of power-driven machinery, other than a hydraulic jack and pneumatic wrench, precluded classification as a workshop.

The Trial Court found Claimant was injured while engaged in hazardous employment. This finding was vacated on appeal, and State Industrial Court denied compensation on the ground Claimant was not engaged in hazardous employment when injured.

Respondent's automotive department encompassed a single area divided into three departments, one devoted to performing what Respondent called minor repairs. Work in the automotive department entailed use of air-driven power tools. Claimant was hired as a tire installer, which involved use of hydraulic jacks and pneumatic tools. Claimant also worked unloading trucks and installing batteries, and performed other duties connected with automotive repair using power-driven machinery. Upon this basis Claimant urges that Respondent's automotive store was a workshop within definition of § 3(11), and therefore hazardous employment under the Act. *City of Tulsa v. State Industrial Commission,* 316 P.2d 612 (Okl.1957), and cases cited.

The statute, § 3(11), provides this definition:

" 'Workshop' means any premises, yard, plant, room or place wherein machinery is employed and manual or mechanical labor is exercised by way of trade for gain or otherwise, or incidental to the process of making, altering, repairing, printing, or ornamenting, cleaning, finishing, or adopting for sale or otherwise, any article, or part of article, machine or thing over which premises, room or place the employer of the person working therein has the rights of access or control."

Respondent claims a retail sales company is not a business enumerated as hazardous. *Oklahoma Tire & Supply Co. v. Summerlin,* 290 P.2d 403 (Okl.1955). Neither is a retail service station a business enumerated as hazardous. *Skelly Oil Co. v. Waters,* 348 P.2d 320 (Okl.1960); *Woods v. Perryman,* 452 P.2d 588 (Okl.1969). It further contends that because only minor repairs were made in the automotive department, and the only power tools Claimant used were hydraulic jack and pneumatic wrench, the repair department could not have been a workshop. And, as there was no power machinery in the battery storage room, this could not have been a workshop, and Claimant could not show he was engaged in hazardous branch of business at the time of injury. See *Teaney v. State Industrial Court,* 458 P.2d 151 (Okl.1969).

Scope of our inquiry is reduced to determining whether Respondent's operation must be treated as non-hazardous because denominated a retail store, or is removed from the retail exclusion and considered a hazardous employment when evidence shows the sphere of operation falls within the statutory definition of a workshop.

Nothing would be gained by citation and discussion of many cases which considered the problem. Our decisions establish that garages are workshops. *Gooldy v. Lawson,* 155 Okl. 259, 9 P.2d 22 (1932); *City of Tulsa v. State Industrial Commission,* 316 P.2d 612 (Okl.1957). Also see *Spraker v. Carroll,* 416 P.2d 946 (Okl.1966), involving an operation considered to have characteristics of both garage and filling station. The Court held that Claimant's work was more hazardous than the work usually performed in filling stations, and that his place of employment was a workshop within the meaning of the Workmen's Compensation Law.

Retail service stations consistently have been excused from compensation coverage as non-hazardous employment solely because not a plant, industry, or occupation defined as hazardous by the Act. *Bishop v. Wilson,* 147 Okl. 224, 296 P. 438 (1931); *Southland Refining Co. v. State Industrial Commission,* 167 Okl. 3, 27 P.2d 827 (1933). More recent decisions continued application of the rule, although basing the conclusion upon determination a retail filling station was not a workshop within purview of § 3(11). See *Rider v. Bob Hiner Service Station,* 321 P.2d 378 (Okl.1958); *Skelly Oil Company v. Waters,* 348 P.2d 320 (Okl. 1960); *Cross v. Brown,* 363 P.2d 935 (Okl. 1961).

In *Skelly Oil Co. v. Waters, supra,* compensation award was vacated for the reason power-driven machinery used was *merely incident* to operation of a business not listed as hazardous. The only power equipment was a hoist, use of which was determined as incidental to the operation of a filling station and did not make the operation a workshop.

In *Cross v. Brown, supra,* a filling station utilized a mechanical appliance to break tires from wheels, an air-driven hoist, and a welding torch. Upon authority of *Rider v. Bob Hiner Service Station, supra,* and *Skelly Oil Co. v. Waters, supra,* which declared power-driven machinery was merely incident to services rendered, the Court held equipment mentioned did not serve to make the filling station a workshop.

The facts in *Woods v. Perryman, supra,* are closer to the present case. A filling station operated a front-end alignment machine, tire balancer, and brake lathe in rendering service, and an air-driven hoist was in use. The station performed automobile tune-ups and installed mufflers and tail pipes. Claimant was injured while unloading oil drums from a truck. Award of compensation was vacated upon two grounds, viz., (1) employment in a filling station is non-hazardous and not within scope of § 2 of the Act; and (2) Claimant was not working as a mechanic or engaged in operation of machinery, but was working as a filling station employee, which was not covered employment, although services on other occasions might come within the Act. In holding the filling station was not a workshop, syllabus 2 enumerated the power-driven machinery in use, but apparently adopted reasoning in *Waters, supra,* that machinery used was only an incidental means of providing more efficient service.

Although theoretically departmentalized into three areas of activity, the automotive shop with which we are here concerned occupied a single room. Mechanical services offered by Respondent unquestionably advance sales of automobile accessory and repair items. Variety of mechanical services offered, and power tools utilized in performance, present a widely different situation from that disclosed in *Waters, supra.* However incidental a hydraulic hoist might have been to sales in a service station nearly twenty years ago, the attempted distinction based upon incidental use no longer is valid where in addition to hydraulic hoist other mechanical devices are used and a workshop is evident. Nature of mechanical services offered and power tools necessarily used in performance clearly are an *integral* part of an automotive repair-replacement business conducted by Respondent.

No need exists to enumerate power tools, machines, or service equipment, utilization of which in rendering automotive service would change a filling station into a workshop. It is sufficient to observe the previous unrealistic categorization of instrumentalities as incidental adjuncts of a retail service station no longer can be applied to a retail operation such as the one here involved. In the past, in an effort to find service stations to be non-hazardous employment, stringent limitations have been read into the statutory definition of a workshop.

■ The statute declares a workshop is *any place* where machinery is employed and *manual or mechanical labor exercised for gain in repairing or adopting for sale any article or thing,* over which premises or place the employer of the person working there has access or right of control. No language in the statute suggests a workshop cannot be a place where minor repairs are made. Nothing in the statute permits determination of whether a workshop exists to rest upon a presumed differentiation between minor repairs and "major overhauling" mentioned in *Woods v. Perryman, supra.*

■ We now hold that distinctions advanced as basis for prior decisions, which held retail filling stations to be non-hazardous, no longer should be considered to express controlling criteria for determining whether a retail service station is within statutory definition of a workshop and a hazardous employment.

■ We further hold this retail automotive service station is a workshop within definition and intent of the statute, supra, and is a hazardous employment for purposes of the Act.

■ Further argument contends, even if Claimant was engaged in hazardous employment, it was necessary to show he was engaged in a department defined as hazardous at the time of injury. This same contention was answered in *Tulsa Linen Service Company v. Kroth,* 512 P.2d 172 (Okl. 1973). We held performance of duty incident to and connected with an employer's principal business being a link in the process, the fact of performance in an area where no machinery is located does not alter the type of employment in which engaged:

> "Foundation for the rule simply is that to deprive an employee, engaged in hazardous employment within the Act, of protection because at the moment of injury he may be performing duty of a simple nature at a place where there is no machinery involved would destroy and render nugatory beneficial provisions of the Act."

The order denying compensation is vacated. The cause is remanded to State Industrial Court for adjudication of any liability resulting from accidental injury in hazardous employment.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

WILLIAMS, J., concurs in result.